UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACRES BONUSING, INC, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>LESTER MARSTON, et al.,<br><br>　　　　Defendants. | Case No. 19-cv-05418-WHO<br><br>**ORDER GRANTING MOTIONS TO DISMISS; DENYING ANTI-SLAPP MOTIONS AND MOTION TO STRIKE ANTI-SLAPP MOTIONS AS MOOT**<br><br>Re: Dkt. Nos. 29, 30, 31, 32, 33, 35, 38, 42, 50 |

Plaintiffs James Acres and Acres Bonusing, Inc. ("ABI") bring this malicious prosecution action against multiple lawyers, law firms, and court personnel who were involved in a previous contractual fraud case filed against plaintiffs by Blue Lake Casino & Hotel ("Blue Lake Casino") in Blue Lake Rancheria Tribal Court.  They sue three sets of defendants: (i) law firm Boutin Jones, Inc., and associated individual attorneys[1], that filed the initial complaint in tribal court on behalf of Blue Lake Casino (hereinafter the "Boutin Jones" defendants); (ii) law firm Janssen Malloy LLP, and associated individual attorneys[2], that replaced Boutin Jones as attorneys for Blue Lake Casino (hereinafter the "Janssen Malloy" defendants) (Boutin Jones and Janssen Malloy defendants are collectively "Attorney Defendants"); and (iii) Blue Lake Tribal Court Chief Judge Lester Marston, Court Clerk Anita Huff, two elected tribal officials[3], law firm "Rapport and Marston" and

---

[1] Michael Chase, Daniel Stouder, and Amy O'Neill.

[2] Megan Yarnall and Amelia Burroughs.

[3] Blue Lake Rancheria elected Vice Chair/Tribal Administrator/Tribal Associate Judge/Blue Lake Casino & Hotel CEO Arla Ramsey and former Tribal Casino executive/Tribal government Economic Development Director Thomas Frank.

associate tribal judges/attorneys[4] (hereinafter the "Blue Lake Defendants").

Before me are seven dispositive motions: motions to dismiss and motions to strike for being sued for conduct protected by California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, filed by each of the three sets of defendants as well as a motion to strike the anti-SLAPP motions by plaintiffs. For the reasons set forth below, I GRANT the motions to dismiss as to all three sets of defendants [Dkt. Nos. 29, 32, 33] on grounds of tribal sovereign immunity. Because I am granting the motion to dismiss on this basis, I need not address defendants' failure to state a claim argument. I DENY the anti-SLAPP motions [Dkt. Nos. 30, 31, 50] and motion to strike the anti-SLAPP motion [Dkt. No. 38] as moot.[5]

**BACKGROUND**

**I.     FACTUAL BACKGROUND**

The Blue Lake Rancheria is a federally recognized Tribal Nation in Humboldt County, California, and is organized under the Constitution of the Blue Lake Rancheria. Complaint ("Compl.") [Dkt. No. 1] ¶ 9. The Blue Lake Tribal Court, which is not named as a defendant in this action, is an established judicial arm of the Tribe. *Id.* ¶ 11.

Acres was the owner of ABI, a Nevada gaming company. Compl. ¶ 8. In 2010, Blue Lake Casino and Acres negotiated an agreement whereby Blue Lake Casino purchased an iSlot gaming system from ABI. *Id.* ¶ 44. In 2015, a dispute arose between them regarding the return of a $250,000 advance deposit. *Id.* ¶¶ 48-52. In January 2016, Boutin Jones filed a complaint in Blue Lake Tribal Court on behalf of Blue Lake Casino against ABI for contract-based claims and against Acres personally for fraudulent inducement. *Id.* ¶ 5; *see also id.*, Ex. 1 (underlying complaint in *Blue Lake Casino & Hotel v. Acres et al.*, Blue Lake Tribal Court Case No. 15-1215IJM) (hereinafter "*Blue Lake Casino v. Acres*").

---

[4] David Rapport, Ashley Burrell, Cooper DeMarse, Darcy Vaughn, and Lathouris Kostan.

[5] Boutin Jones' motion to join and adopt Janssen Malloy's opposition to plaintiffs' motion to strike the anti-SLAPP motion [Dkt. No 42] is DENIED as moot. Boutin Jones' request for judicial notice of documents related to its anti-SLAPP motion [Dkt. No. 30-2] and plaintiffs' request for judicial notice of documents related to its opposition to the anti-SLAPP motions [Dkt. No. 55] are also DENIED as moot.

Boutin Jones represented Blue Lake Casino in tribal court until February 2017, when Janssen Malloy substituted into the case to serve as counsel for Blue Lake Casino. Compl. ¶¶ 27-29, 111. Blue Lake Rancheria Tribal Court Chief Judge Marston was the original presiding judge until December 2016 when he voluntarily recused himself and Justice James N. Lambden, a retired justice from the California Court of Appeals, replaced him. *Id.* ¶¶ 16, 31, 104.

While the tribal court case was pending, Acres filed two federal court actions asserting that the tribal court lacked jurisdiction over him. On August 10, 2016, I dismissed his initial federal action for lack of subject matter jurisdiction because he failed to exhaust tribal remedies. *Acres v. Blue Lake Rancheria Tribal Court*, No. 16-CV-02622-WHO, 2016 WL 4208328, at *4 (N.D. Cal. Aug. 10, 2016) (hereinafter "*Acres I*"). The following month, Acres and ABI filed another suit arguing that although they did not exhaust tribal remedies, the bad faith exception applies because Judge Marston did not disclose his conflicts of interest and recuse himself. *Acres v. Blue Lake Rancheria*, No. 16-CV-05391-WHO, 2017 WL 733114, at *1 (N.D. Cal. Feb. 24, 2017) (hereinafter "*Acres II*"). After granting limited discovery on the issue of bad faith, I dismissed the second federal action for failure to exhaust tribal remedies, which was affirmed by the Ninth Circuit on June 30, 2017. *Acres v. Blue Lake Rancheria*, 692 F. App'x 894 (9th Cir. 2017).[6]

The underlying tribal court case continued. In July 2017, Justice Lambden issued an order granting Acres summary judgment and dismissing him from the suit. Compl. ¶ 5 & Ex. 2. In August 2017, Justice Lambden dismissed the suit in its entirety. *Id.* ¶ 5 & Ex. 3. Because no notice of appeal was timely filed according to tribal law, Acres and ABI contend that ABI's claims for wrongful use of civil proceedings are ripe and that the statute of limitations has not expired.

---

[6] On January 9, 2020, Acres filed a discovery dispute statement regarding his 118 requests for production of documents identified in Judge Marston's billing records, which were produced in *Acres II*. Plaintiffs' Discovery Dispute Statement [Dkt. No. 35]. On January 10, 2020, the Blue Lake Defendants objected to this discovery because they have raised a threshold challenge to this court's jurisdiction over them and argued that the requests go far beyond jurisdictional discovery. Defendants' Discovery Dispute Statement [Dkt. No. 36]. In their February 3, 2020 joint stipulation, parties indicated that although the dispute was not resolved, the Blue Lake Defendants have told plaintiffs that "Blue Lake Rancheria may shortly provide evidence [that] Blue Lake wishes to share its sovereign immunity with Defendants." Stipulated Rescheduling of Threshold Motions [Dkt. No. 37]. This discovery dispute is VACATED as moot because I am dismissing the Complaint as barred by sovereign immunity.

3

*Id.* ¶ 5.

On July 13, 2018, Acres filed a malicious prosecution action in Sacramento County Superior Court, *Acres v. Marston*, Case No. 34-2018-00236829, that he concedes is substantially similar to the action before me. Compl. ¶ 32 n.5. The first seven claims are virtually identical to the seven causes of action Acres unsuccessfully asserted against the same defendants on the same facts in state court. *Id.* These seven causes of actions are: (i) wrongful use of civil proceedings; (ii) aiding and abetting wrongful use of civil proceedings; (iii) conspiracy to commit wrongful use of civil proceedings; (iv) breach of fiduciary duty; (v) aiding and abetting breach of fiduciary duty; (vi) constructive fraud; and (vii) aiding and abetting constructive fraud.[7]

The only material differences between Acres' state court complaint and this federal action are that ABI was not a party to the former and that this action asserts an eighth cause of action based upon the same facts under the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Almost all of the factual assertions about the defendants' respective roles in the underlying tribal action are identical between the two complaints, except for the few added assertions plaintiffs make based on a declaration filed by defendants in the state court action. *See, e.g.*, Compl. ¶¶ 73, 93.[8]

On February 11, 2019, the Sacramento County Superior Court granted motions to dismiss as to all three sets of defendants and found the anti-SLAPP motions moot. *See Acres v. Marston*, No. 34-2018-00236829, 2019 WL 8400827 (Cal. Super. Feb. 11, 2019); *Acres v. Marston*, No. 34-2018-00236829, 2019 WL 8400826 (Cal. Super. Feb. 11, 2019).[9] On April 11, 2019, Acres

---

[7] The state court decision provides a lengthy summary of plaintiffs' allegations and the alleged roles of the moving defendants in relation to those allegations. *See Acres v. Marston*, 2019 WL 8400827, at *2.

[8] For example, plaintiffs added an allegation that Rapport and DeMarse also rendered legal services to the tribe's attorneys providing backup to the Boutin Jones attorneys defending the tribal court in both federal court actions *Acres I* and *Acres II*. This added paragraph, in addition to the few others, amount to minor differences between the complaints filed here and in state court.

[9] Copies of the state court's decisions are also submitted as Exhibit A to Janssen Malloy's motion to dismiss and as Exhibit 2 to Blue Lake Defendants' request for judicial notice. *See* Exhibit A to Janssen Malloy Motion to Dismiss [Dkt. No. 34] (copy of Sacramento County Superior Court opinion as to Attorney Defendants); Defendants' Request for Judicial Notice, and Declaration of Counsel in Support Thereof ("Blue Lake RJN") [Dkt. No. 32-7] Ex. 2 (copy of Sacramento

1    appealed both dismissal decisions to the California Court of Appeals, Third District, Case No.

2    C089344, where it is currently pending. Compl. ¶ 32 n. 6.

## II.  PROCEDURAL BACKGROUND

On August 28, 2019, Acres and ABI filed this action, which, as stated above, brings the same claims against the same defendants in the state court action, except for an added RICO claim.

The Attorney Defendants move to dismiss based upon sovereign immunity under Rule 12(b)(1) and/or for failure to state a claim under Rule 12(b)(6). *See* Specially Appearing Defendants Boutin Jones Inc., Michael Chase, Daniel Stouder & Amy O'Neil's Memorandum of Points & Authorities in Support of Their Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss Plaintiffs' Complaint ("Boutin Jones MTD") [Dkt. No. 29-1]; Notice of Motion and Motion of Defendants Janssen Malloy LLP, Megan Yarnall and Amelia Burroughs to Dismiss the Verified Complaint of Plaintiffs Based Upon Sovereign Immunity under FRCP 12(b)(1) and/or Failure to State a Claim under FRCP 12(b)(6) ("Janssen Malloy MTD") [Dkt. No. 33]. The Blue Lake Defendants also move to dismiss based on sovereign immunity under Rule 12(b)(1). *See* Memorandum of Points and Authorities in Support of Motion to Dismiss under FRCP 12(b)(1), (2) ("Blue Lake MTD") [Dkt. No. 32]. These motions were fully briefed. Because the motions could be decided on the papers, I vacated the hearing.

## LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited

---

County Superior Court opinion as to Blue Lake Defendants).

Blue Lake Defendants' request for judicial notice of this state court decision is GRANTED because it is a matter of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing Fed. R. Evid. 201). Their request for judicial notice of other documents relating to their motion to dismiss is also GRANTED because these documents are matters of public record and/or incorporated by reference by the Complaint. *See* Blue Lake RJN, Ex. 1 (copy of the Nevada Secretary of State's listing for ABI, in which Acres is identified as ABI's president, secretary, treasurer and director); Ex. 3 (copy of Class III gaming compact Blue Lake Casino has with the State of California); and Ex. 4 (copy of "Order Granting Limited Discovery RE Bad Faith Exception and Issuing Protective Order" in *Acres II*).

1  jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v.*
2  *Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  The party invoking the jurisdiction of the
3  federal court bears the burden of establishing that the court has the requisite subject matter
4  jurisdiction to grant the relief requested.  *Id.*

5        A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *See White v. Lee*, 227 F.3d
6  1214, 1242 (9th Cir. 2000).  In a facial attack, the jurisdictional challenge is confined to the
7  allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).
8  The challenger asserts that the allegations in the complaint are insufficient "on their face" to
9  invoke federal jurisdiction.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.
10  2004).  To resolve this challenge, the court assumes that the allegations in the complaint are true
11  and draws all reasonable inference in favor of the party opposing dismissal.  *See Wolfe*, 392 F.3d
12  at 362.

13        "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by
14  themselves, would otherwise invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039.  To resolve
15  this challenge, the court "need not presume the truthfulness of the plaintiff's allegations."  *Id.*
16  (citation omitted).  Instead, the court "may review evidence beyond the complaint without
17  converting the motion to dismiss into a motion for summary judgment."  *Id.* (citations omitted).
18  Once the moving party has made a factual challenge by offering affidavits or other evidence to
19  dispute the allegations in the complaint, the party opposing the motion must "present affidavits or
20  any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses
21  subject matter jurisdiction."  *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also*
22  *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

## DISCUSSION

24        As sovereigns, Tribal Nations are generally immune from suit.  *Lewis v. Clarke*, 137 S. Ct.
25  1285, 1288 (2017).  Sovereign immunity extends to tribal officials when they act in their official
26  capacity and within the scope of their authority; however, when tribal officials act beyond their
27  authority they lose their right to the sovereign's immunity.  *See id.*; *Imperial Granite Co. v. Pala*
28  *Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991).  Sovereign immunity does not

always extend to tribal employees sued in their individual capacities. *See Lewis*, 137 S. Ct. at 1288. Even when a tribal employee is sued for actions taken within the scope of her employment, a personal suit can proceed unless the court determines that "the sovereign is the real party in interest." *Id.* at 1290-91. Sovereign immunity therefore bars suits when "the remedy sought is truly against the sovereign." *Id.* at 1290.

For the reasons set forth below, I find that all of the defendants were functioning as the Tribe's officials or agents when the alleged acts were committed and dismiss the Complaint based on tribal sovereign immunity.

## I. ATTORNEY DEFENDANTS' MOTION TO DISMISS

Attorney Defendants point to *Great W. Casinos, Inc. v. Morongo Band of Mission Indians*, 74 Cal. App. 4th 1407 (1999) as an illustrative example of when tribal sovereign immunity extends to a tribe's outside legal counsel. The plaintiff in that case filed suit against a tribe, the tribal council, individual tribal council members, the tribe's general counsel, and an attorney and her private law firm regarding the tribe's cancellation of a contract. 74 Cal. App. 4th at 1413. The plaintiff alleged multiple fraud claims, abuse of process, and a RICO claim. *Id.* at 1414. The trial court dismissed the suit based upon tribal sovereign immunity and the California Court of Appeal affirmed, finding in relevant part that the non-Indian law firm and general counsel were protected by tribal sovereign immunity from liability for actions taken or opinions given in rendering legal services to the tribe to the same extent of immunity entitled to the tribe, tribal council, and tribe members. *Id.* at 1423.

The court held that "[i]n providing legal representation—even advising, counseling and conspiring with the tribe to wrongfully terminate the management contract—counsel were similarly immune from liability for those professional services." 74 Cal. App. 4th at 1423 (citing *Davis v. Littell*, 398 F.2d 83, 85 (9th Cir. 1968)). The court continued: "Refusing to recognize an extension of a tribe's sovereign immunity to cover general counsel's advice to the tribe could not only jeopardize the tribe's interests but could also adversely influence counsel's representation of the tribe in the future. For these reasons, counsel, in allegedly advising the tribe to wrongfully terminate the management contract, are similarly covered by the tribe's sovereign immunity." *Id.*

Attorney Defendants in this suit are immune from liability based on acts done in the course of representing Blue Lake Casino in tribal court for its dispute with plaintiffs. The Complaint does not allege that Attorney Defendants acted outside of the scope of authority granted to them in their representation of Blue Lake Casino; rather the allegations describe actions typically done in rendering legal services. *See, e.g.*, Compl. ¶¶ 23-25, 27-29,111, 115, 116; *see Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 91 (S.D.N.Y. 2002) (relying on *Great W. Casino* and finding "[a]s a general proposition, a tribe's attorney, when acting as a representative of the tribe and within the scope of his authority, is cloaked in the immunity of the tribe just as a tribal official is cloaked with that immunity").

Plaintiffs argue that *Great W. Casinos* is overruled by *Lewis* because it "failed to use the 'who-may-be-bound' test required by *Lewis*." Plaintiffs' Opposition to Defendant Boutin Jones' Motion to Dismiss ("Oppo. Boutin Jones MTD") [Dkt. No. 43] 14. The Sacramento County Superior Court rejected this argument, as do I. *See Acres v. Marston*, 2019 WL 8400826, at *11. The extension of tribal sovereign immunity to the tribe's legal counsel in *Great W. Casinos* is not inconsistent with the official-capacity and personal-capacity dichotomy identified in *Lewis*.

The Supreme Court in *Lewis* made clear that "[t]he identity of the real party in interest dictates what immunities may be available." 137 S. Ct. at 1291. The tribal employee in *Lewis* was sued for negligence when he allegedly caused a motor-vehicle accident while shuttling customers for the tribe. *Id.* He was not entitled to sovereign immunity because the Supreme Court found that a "judgment will not operate against the Tribe" and "will not require action by the sovereign or disturb the sovereign's property." *Id.*

Two other Ninth Circuit cases also declined to extend sovereign immunity because they were factually-similar to *Lewis*. In *Pistor v. Garcia*, internal governance concerns were not implicated by plaintiffs, who were allegedly detained at a tribal casino and sued the tribal police chief, gaming office inspector and the casino's general manager in their individual capacities for violating their Fourth and Fourteenth Amendment rights and other state tort laws. 791 F.3d 1104, 1113 (9th Cir. 2015). In *Maxwell v. County of San Diego*, sovereign immunity did not apply because the lawsuit named tribal fire department paramedics as individual defendants and sought

8

monetary damages for their negligence that would "come from their own pockets, not the tribal treasury." 708 F.3d 1075, 1089 (9th Cir. 2013).

Although the Ninth Circuit declined to extend sovereign immunity to the defendants in *Maxwell*, it nonetheless cautioned against entertaining individual suits which are in reality against the tribe:

> In any suit against tribal officers, we must be sensitive to whether the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the [sovereign] from acting, or to compel it to act.

*Maxwell*, 708 F.3d at 1088. As examples of such suits, *Maxwell* pointed to *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718 (9th Cir. 2008) and *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 478 (9th Cir. 1985). In *Cook*, the plaintiffs' object was to reach the public treasury through a respondeat superior ruling against the tribal officials, and therefore the suit was barred by sovereign immunity because the real party in interest was the tribe. *Cook*, 548 F.3d at 727. In *Hardin*, sovereign immunity barred the plaintiff from litigating a case against high-ranking tribal council members seeking to hold them individually liable for voting to eject the plaintiff from tribal land; to hold otherwise, the Ninth Circuit ruled, would interfere with the tribe's internal governance. *Hardin*, 779 F.2d at 478. "*Hardin* was in reality an official capacity suit, barred by sovereign immunity, because the alternative, to [h]old[ ] the defendants liable for their legislative functions[,] would . . . have attacked the very core of tribal sovereignty." *Maxwell*, 708 F.3d at 1089 (internal quotation marks and citation omitted).

This case is like *Hardin* and *Cook*. The alleged acts occurred when Attorney Defendants were acting within the scope of their tribal authority, *i.e.*, within the scope of their representation of Blue Lake Casino. Accordingly, the real party in interest here is the tribe because adjudicating this dispute would require the court to interfere with the tribe's internal governance.[10]

---

[10] Plaintiffs also attempts to analogize this case to *JW Gaming Dev., LLC v. James*, in which I found tribal defendants were not entitled to sovereign immunity. No. 3:18-CV-02669-WHO, 2018 WL 4853222 (N.D. Cal. Oct. 5, 2018), *aff'd,* 778 F. App'x 545 (9th Cir. 2019), *cert. denied,* No. 19-971, 2020 WL 1124446 (Mar. 9, 2020). The facts alleged in that case were different. JW Gaming alleged that individual defendants, who happened to be tribal officials, engaged in fraud when entering into contracts with outside vendors and therefore the "individual defendants—not the Tribe—will be bound" in the event of an adverse judgment. *Id.* at *4. By contrast, this case is

9

Despite the nature of their allegations, plaintiffs still contend that sovereign immunity is inapplicable because Attorney Defendants are sued in their individual capacities. Oppo. Boutin Jones MTD 14. The California Court of Appeals rejected a similar argument made by plaintiffs in *Brown v. Garcia*, 17 Cal. App. 5th 1198 (2017). In that case, plaintiff tribe members brought a defamation action against other tribe members who published an "Order of Disenrollment" that accused plaintiffs of multiple legal violations that could be punishable by loss of membership. *Id.* at 1200-01. Those plaintiffs denied that their action would require the court to adjudicate an intra-tribal dispute or insert itself in tribal law, custom, practice or tradition; instead, they argued that they were "simply asking that the Defendants, in their individual capacities, be held accountable for their defamations of fellow Californians." *Id.* at 1201.

Looking to Ninth Circuit authorities discussed above, the *Brown* court rejected the plaintiffs' contentions and found that "sovereign immunity will nonetheless apply in appropriate circumstances even though the complaint names and seeks damages only from individual defendants." *Id.* at 1205 (citing *Pistor*, 791 F.3d at 1113). It found that "[n]otwithstanding plaintiffs' assertion that their action is purely about harmful publications and does not require a court to interfere with any membership or governance decisions, . . . adjudicating the dispute would require the court to determine whether tribal law authorized defendants to publish the Order and disenroll plaintiffs, which itself requires an impressible analysis of Tribal law and constitutes a determination of non-justiciable inter-tribal dispute." *Id.* at 1206-07 (internal quotation marks omitted). It differentiated the circumstances from *Maxwell*, *Pistor* and *Lewis*, in which "[t]he wrongs alleged . . . were garden variety torts with no relationship to tribal governance and administration." *Id.* at 1206.

Looking beyond the façade of a facially-pleaded individual-capacity lawsuit, I find that "entertaining [this] suit would require the court to adjudicate the propriety of the manner in which tribal officials carried out an inherently tribal function." *Brown*, 17 Cal. App. 5th at 1207. Attorney Defendants persuasively raise these concerns: "If the court were to wade in and decide

---

about actions taken by attorneys who represented a tribe before a tribal court.

10

1  what actions are or are not permissible in Tribal Court it necessarily asserts control of that Court.
2  Is this Court, as Plaintiffs contends, supposed to rule on what pleadings are appropriate in Tribal
3  Court or how an action in Tribal Court must be plead[ed]? . . . Is it to determine when, in Tribal
4  Court, an attorney has misused the Tribal Court's judicial process . . . or whether the Tribal Court
5  correctly followed its own procedures?" Janssen Malloy MTD 13.

As the Sacramento County Superior Court found, "[t]hese are not insignificant or immaterial questions in the malicious prosecution action, since the case involves alleged malicious prosecution *only in the Tribal Court*." *Acres v. Marston*, 2019 WL 8400826, at *12 (emphasis in original). Just as entertaining the suit in *Brown* would require the court to question an inherently tribal function, entertaining this suit would require me to question the judicial function of the Blue Lake Rancheria Tribal Court. The real party in interest here is the Tribe itself. For these reasons, Attorney Defendants' motion to dismiss on grounds of tribal sovereign immunity is GRANTED.

## II.    BLUE LAKE DEFENDANTS' MOTION TO DISMISS

Plaintiffs also sue tribal court personnel and other officials who were involved in the underlying tribal action. The Blue Lake Defendants consist of: (i) Chief Judge Marston, (ii) Clerk Huff, (iii) elected tribal officials Ramsey and Frank, (iv) an alleged law firm "Rapport and Marston" (v) tribal attorneys Rapport and DeMarse; (vi) and tribal court associate judges/law clerks Burrell, Vaughn and Lathouris.

Judge Marston is alleged to have served as the Chief Judge of the Blue Lake Tribal Court, and he originally presided over the underlying tribal action *Blue Lake Casino v. Acres*. Compl. ¶ 16. Clerk Huff is alleged to have been the Clerk of the Tribal Court during *Blue Lake Casino v. Acres*, and while acting as Clerk, she was also employed by Tribe in various other roles, like "Grants and Contracts Manager." *Id.* ¶ 15. During *Blue Lake Casino v. Acres*, most of the orders issued by the Tribal Court were served by Clerk Huff upon the parties. *Id.* ¶ 123.

Ramsey is alleged to have been the Chief Executive Officer of Blue Lake Casino during *Blue Lake Casino v. Acres* and also served as Tribe's Tribal Administrator, as a judge of Blue Lake's Tribal Court, and as the vice-chair of the Blue Lake Business Council. Compl. ¶ 13. In her role as Tribal Administrator, Ramsey was responsible for the day to day business affairs of

11

the Tribal Government, and supervised the work of Clerk Huff. *Id.*

Frank is alleged to have held various executive roles for Tribe over the past 15 years, including as a Blue Lake Casino executive (until 2009) and as Director of Business Development for Tribe (from 2010 until at least 2015). Compl. ¶ 14. During *Blue Lake Casino v. Acres*, Frank verified Blue Lake Casino's discovery responses to Acres, and made several sworn declarations. *Id.* ¶ 122.

Rapport allegedly provided attorney services to the Tribe in partnership with Judge Marston since at least 1983. Compl. ¶ 18. Rapport & Marston is alleged to be a law firm consisting of Judge Marston and Rapport, but this is repeatedly disputed in their motion papers. *Id.* ¶ 17.

DeMarse is alleged to be an associate judge of the Blue Lake Tribal Court, and a licensed California attorney associated with Rapport and Marston. Compl. ¶ 20. DeMarse performed legal services for Tribe, and also provided legal service to Judge Marston in his role as judge in *Blue Lake Casino v. Acres*. *Id.* ¶ 128.

Burrell is alleged to be an associate judge of the Blue Lake Tribal Court, and a licensed California attorney associated with Rapport and Marston. Compl. ¶ 19. Burrell performed legal services for Tribe, and also provided legal service to Judge Marston in his role as judge in *Blue Lake Casino v. Acres*. *Id.* ¶ 125.

Vaughn is alleged to be an associate judge of the Blue Lake Tribal Court, and a licensed California attorney associated with Rapport and Marston. Compl. ¶ 21. Vaughn performed legal services for Tribe, and also provided legal service to Judge Marston in his role as judge in *Blue Lake Casino v. Acres*. *Id.* ¶ 126.

Lathouris is alleged to be an attorney licensed in Nevada and associated with Rapport and Marston. Compl. ¶ 22. Lathouris performed legal services for Tribe, and also provided legal service to Judge Marston in his role as judge in Blue Lake Casino v. Acres. *Id.* ¶ 127

As explained above with respect to the Attorney Defendants, plaintiffs' facial characterization that this case only seeks to sue the Blue Lake Defendants individually is unconvincing. This case is more similar to *Hardin*, where the tribe was a real party in interest

because plaintiffs sued high-ranking tribal council members for voting to eject him, than it is to *Lewis*, where the tribe was not a real party in interest because plaintiffs sued a tribal employee for negligence in driving casino customers to their homes off of the tribe's lands.

The Blue Lake Defendants are named as individual defendants but the tribe is the real party in interest. It was the tribe, not any of the individual Blue Lake Defendants, who sued plaintiffs in the underlying tribal court case. The tribe appointed Judge Marston and Clerk Huff and both were exercising tribe judicial powers in operation of court. Acting in his capacity, Judge Marston retained services of Burrrell, Vaughn, and Lathouris to assist in exercising governmental powers in the underlying tribal court case. The tribe then retained Rapport and DeMarse as its general counsel to provide the tribe with legal advice in defending Acres' subsequent federal suits. Allowing this litigation to proceed will necessarily impact the ways in which tribal employees and officials carry out their official duties and question a tribe's right to set up and operate its own courts under its own rules and laws.

For the reasons discussed above, I dismiss the Complaint against Blue Lake Defendants because of tribal sovereign immunity. In addition, I will briefly address the Blue Lake Defendants' alternative defenses of judicial immunity and quasi-judicial immunity.

Judges are absolutely immune from civil liability for damages for acts performed in their judicial capacity. *See Pierson v. Ray*, 386 U.S. 547, 553-55 (1967). Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction. *Id.* at 356-57 (internal quotation marks and citation omitted); *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991) (judicial immunity is not overcome by allegations of bad faith or malice); *Sadorski v. Mosley*, 435 F.3d 1076, 1079 n. 2 (9th Cir. 2006) (mistake alone is not sufficient to deprive a judge of absolute immunity).

Courts have recognized "the long-standing federal policy supporting the development of tribal courts" for the purpose of encouraging tribal self-government and self-determination. *See*

*Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987) ("[A] federal court's exercise of jurisdiction over matters relating to reservation affairs can . . . impair the authority of tribal courts."). Accordingly, a tribal court judge is entitled to the same absolute judicial immunity that shields state and federal court judges. *See Acres v. Marston*, 2019 WL 8400827, at *11 (citing *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003)).

Plaintiffs concede that "Judge Marston enjoys absolute immunity from suit for any conduct that was essentially judicial in nature," but nonetheless attempt to hold Judge Marston liable for what they characterize as "non-judicial acts." Compl. ¶ 16. However, all of the alleged acts by the Blue Lake Defendants with judicial roles (all except Ramsey and Rapport) were either judicial or quasi-judicial acts. None of the alleged acts could be characterized "non-judicial" and whether the acts were malicious or fraudulent does not overcome the protection of this immunity. Accordingly, I also dismiss the Blue Lake Defendants on the alternate grounds of judicial immunity and quasi-judicial immunity.

**CONCLUSION**

The Attorney Defendants' and Blue Lake Defendants' motions to dismiss are GRANTED on grounds of tribal sovereign immunity, judicial immunity and quasi-judicial immunity. The anti-SLAPP motions and motion to strike the anti-SLAPP motions are DENIED as moot. Accordingly, this case is DISMISSED and the Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: April 15, 2020

William H. Orrick
United States District Judge