UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACRES BONUSING, INC, et al.,<br><br>        Plaintiffs,<br><br>       v.<br><br>LESTER MARSTON, et al.,<br><br>        Defendants. | Case No. 3:19-cv-05418-WHO<br><br>**ORDER ON MOTIONS TO DISMISS AND STRIKE**<br><br>Re: Dkt. Nos. 78, 79, 80 |

Plaintiffs James Acres and Acres Bonusing, Inc. ("ABI") entered into a contract with the defendants—who are associated with Blue Lake Rancheria ("Blue Lake"), a federally recognized tribe—to provide a gaming platform for Blue Lake's casino. The deal allegedly went south and some of the defendants brought suit against the plaintiffs in tribal court, represented by other defendants. Here, the plaintiffs allege that the defendants' prosecution of the tribal suit and related actions renders them liable for misuse of process, breach of fiduciary duty, fraud, and racketeering activity.

After a trip to the Ninth Circuit and back, most of the remaining defendants are lawyers and law firms who represented the tribe in its tribal suit. They move to dismiss primarily on grounds of immunity. That motion is granted; their actions are shielded from liability by prosecutorial immunity. For completeness, I also rule on several alternative grounds for dismissal. The two other defendants, executives of the tribe, move to dismiss the racketeering claim. That motion is granted with leave to amend because no plausible racketeering activity has yet been alleged.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

Acres owns ABI, a gaming company. Complaint ("Compl.") [Dkt. No. 1] ¶ 8. Blue Lake is a federally recognized tribe in Humboldt County, California. *Id.* ¶¶ 1, 9. It owns and operates the Blue Lake Casino & Hotel ("Blue Lake Casino" or "the Casino"). *Id.* ¶ 12. Defendant Arla Ramsey was its CEO, a judge of Blue Lake's tribal court, and vice-chair of the tribe's business council. *Id.* ¶ 13. Defendant Thomas Frank was an executive of the Casino and sometimes an officer of the tribe. *Id.* ¶ 14.

In 2010, Blue Lake Casino and ABI entered into an agreement that called for the Casino to purchase iSlot, an iPad-based gaming platform, from ABI for $250,000. *Id.* ¶ 44. In 2011 and 2013, Blue Lake and ABI were in discussions for Blue Lake to acquire nationwide distribution rights to iSlot, which ABI ultimately did not agree to. *Id.* ¶ 45. Attorneys from defendant law firm Boutin Jones, Inc. ("Boutin Jones") drafted the proposed agreement. *Id.* In August 2015, defendant Daniel Stouder, an attorney at Boutin Jones, sent ABI a letter on behalf of Blue Lake Casino demanding that ABI pay approximately $320,600 to avoid legal action related to the iSlot agreement. *Id.* ¶¶ 25, 48. According to the plaintiffs, the iSlot agreement expired in October 2012. *Id.* ¶ 47.

In January 2016, Blue Lake initiated a case in its judicial arm, the Tribal Court of the Blue Lake Rancheria ("the Tribal Court"), over the agreement. *Id.* ¶¶ 5, 11, 52; *see also* Dkt. No. 1-1 (complaint in *Blue Lake Casino & Hotel v. Acres et al.*, Blue Lake Tribal Court Case No. 15-1215IJM ("*Tribal Court Case*")). The complaint in the *Tribal Court Case* alleged claims against ABI and Acres for fraudulent inducement. Dkt. No. 1-1. Boutin Jones—through its attorneys Stouder and defendants Michael Chase and Amy O'Neil—represented the Casino in that suit. Compl. ¶¶ 23–26. Eventually, defendant law firm Janssen Malloy LLP ("Janssen Malloy"), through attorney defendants Megan Yarnall and Amelia Burroughs, replaced Boutin Jones. *Id.* ¶¶ 26–29. Former defendant Lester John Marston was the judge in the *Tribal Court Case*. *Id.* ¶ 16. Marston eventually recused himself and was replaced by James Lambden, a retired justice of the California Court of Appeal ("Justice Lambden"). *Id.* ¶ 31. According to Acres, Marston did so

2

due to conflicts of interest, including that he was the tribe's attorney. The defendant named as Rapport and Marston ("R&M") is alleged to be an association of attorneys that holds itself out as a law firm but is not registered as one. *Id.* ¶ 17. Marston and defendant David Rapport are the sole members. *Id.* ¶¶ 17–18.

Acres filed two suits in federal court to enjoin the *Tribal Court Case*. In the first, I dismissed the suit for failure to exhaust tribal-court remedies. *Acres v. Blue Lake Rancheria Tribal Court*, No. 16-CV-02622-WHO, 2016 WL 4208328 (N.D. Cal. Aug. 10, 2016). In the second, I granted limited discovery on whether the bad-faith exception to tribal-court exhaustion applied based on Acres's allegations that Judge Marston failed to disclose conflicts of interest. *See Acres v. Blue Lake Rancheria*, No. 16-CV-05391-WHO, 2017 WL 733114, at *1 (N.D. Cal. Feb. 24, 2017). But I ultimately dismissed that action for failure to exhaust, *see id.*, at *3, and the Ninth Circuit affirmed that dismissal, *Acres v. Blue Lake Rancheria*, 692 F. App'x 894 (9th Cir. 2017).

In the *Tribal Court Case*, Justice Lambden granted summary judgment to Acres and dismissed him from the suit in July 2017. Compl. ¶ 5; *id.*, Ex. 2. He later dismissed the suit. *Id.* ¶ 5; *id.*, Ex. 3.

In July 2018, Acres filed a malicious prosecution suit in California state court that is "substantially similar" to this suit. Order Granting Motions to Dismiss ("Prior Order") [Dkt. No. 65] 4. The Superior Court dismissed the suit on sovereign immunity and judicial immunity or quasi-judicial immunity grounds; recently, the Court of Appeal affirmed in part and reversed in part in a published opinion. *See Acres v. Marston*, 72 Cal. App. 5th 417 (2021), *as modified on denial of reh'g* (Dec. 10, 2021) ("*State Court Case*"). Its holding is described in greater detail below. The California Supreme Court denied a petition for review.

**II.    PROCEDURAL BACKGROUND**

Acres and ABI filed this case in August 2019. They brought claims for wrongful use of civil proceedings (and aiding and abetting and conspiracy), breach of fiduciary duty (and aiding and abetting), constructive fraud, and violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.

1    In March 2020, I granted the defendants' motions to dismiss. *See* Prior Order. I found that
2    "all of the defendants were functioning as the Tribe's officials or agents when the alleged acts
3    were committed" and were consequently shielded from suit by sovereign immunity. *Id.* 7. In the
4    alternative, I found that Judge Marston, Ramsey, Frank, Rapport, DeMarse, Burrell, Vaugn, and
5    Lathouris were shielded by judicial immunity or quasi-judicial immunity. *Id.* 14. Because the
6    case was dismissed in its entirety, I denied concurrently filed anti-SLAAP motions from the
7    defendants (and a motion to strike those motions from the plaintiffs). *Id.* 2.

The Ninth Circuit affirmed on the issue of judicial immunity and reversed on the issue of sovereign immunity. *Acres Bonusing, Inc v. Marston*, 17 F.4th 901 (9th Cir. 2021) ("*Ninth Circuit Op.*"). It held that sovereign immunity did not shield any of the defendants from suit because the tribe was not the real party in interest. *Id.* at 908. It held that Judge Marston, his law clerks, and the court clerk were entitled to judicial immunity. *Id.* at 916. And it held that Ramsey, Frank, Rapport, and R&M were not entitled to judicial or quasi-judicial immunity. *Id.* As a result, Ramsey, Frank, Rapport, R&M, Boutin Jones, Chase, Stouder, O'Neil, Janssen Malloy, Yarnall, and Burroughs remain in the suit. *Id.* at 917. Plaintiffs' petition for writ of certiorari is still pending.

The Ninth Circuit's mandate issued in December 2021, Dkt. No. 72. The defendants once again have moved to dismiss.

**LEGAL STANDARD**

**I.   MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the

4

1  allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).
2  The challenger asserts that the allegations in the complaint are insufficient "on their face" to
3  invoke federal jurisdiction.  *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th
4  Cir. 2004).  To resolve this challenge, the court assumes that the allegations in the complaint are
5  true and draws all reasonable inference in favor of the party opposing dismissal.  *See Wolfe*, 392
6  F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.  To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted).  Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

## II.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

1  plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court
2  is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of
3  fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
4  2008).

5  If the court dismisses the complaint, it "should grant leave to amend even if no request to
6  amend the pleading was made, unless it determines that the pleading could not possibly be cured
7  by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In
8  making this determination, the court should consider factors such as "the presence or absence of
9  undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous
10 amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See
11 Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

Various sets of defendants move to dismiss. Boustin Jones, Chase, Stouder, and O'Neil (collectively, the "Boutin Jones Defendants") argue that they are immune from suit based on prosecutorial immunity for representing the Casino. *See* Dkt. No. 78-1 ("Boutin Jones Mot."). They argue in the alternative that the RICO claim is not actionable and the statute of limitations has expired. *Id.* Janssen Malloy, Yarnall, and Burroughs (collectively, the "Janssen Malloy Defendants") make substantially similar arguments. *See* Dkt. No. 79 ("Janssen Malloy Mot."). Rapport and R&M raise those arguments too, with the twist that the claims are barred by issue preclusion due to the *State Court Case*. *See* Dkt. No. 80-1 ("Rapport Mot."). Ramsey and Frank do not rely on immunity doctrines; they argue that the RICO claim is not actionable. *See id.*

**I.   PROSECUTORIAL IMMUNITY**

For the reasons that follow, I conclude that the Boutin Jones Defendants, the Janssen Malloy Defendants, Rapport, and R&M (collectively, the "Attorney Defendants") are entitled to prosecutorial immunity from suit.[1]

---

[1] Rapport and R&M's brief argues that they are entitled to issue preclusion on the issue of prosecutorial immunity because the California Court of Appeal held that they were immune. I take them to argue they are also immune regardless of the state court ruling. *See, e.g.*, Rapport Mot. 1 ("By this motion, Defendants Rapport and "R&M" seek an order dismissing the Complaint

6

On appeal in this case, the Ninth Circuit held that sovereign immunity did not bar these claims against the moving defendants in their individual capacities. *Ninth Circuit Op.*, 17 F.4th at 908. But even though that is so, "[a]n officer in an individual-capacity action . . . may be able to assert personal immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017). The plaintiffs accept that this principle applies to tribal officials. *See* Opposition to the Motions to Dismiss ("Oppo.") [Dkt. No. 82] 15. As the Ninth Circuit held on appeal here, "[t]ribal officials, like federal and state officials, can invoke personal immunity defenses." *Ninth Circuit Op.*, 17 F.4th at 915.

As a general matter, prosecutorial immunity "is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties." *Imbler v. Pachtman*, 424 U.S. 409, 422–23 (1976).[2] Those considerations include "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423. As the Ninth Circuit has explained,

> absolute immunity for prosecutors is warranted (1) to allow prosecutors to focus their energies on prosecuting, rather than defending lawsuits; (2) to enable prosecutors to exercise independent judgment in deciding which suits to bring and conducting them in court; (3) to preserve the criminal justice system's function of determining guilt or innocence by ensuring that triers of fact are not denied relevant (although sometimes conflicting) evidence because of prosecutors' fear of suit; and (4) to ensure fairness to defendants by enabling judges to make rulings in their favor without the subconscious knowledge that such rulings could subject the prosecutor to liability.

*Milstein v. Cooley*, 257 F.3d 1004, 1007 (9th Cir. 2001) (citations omitted).

"[I]mmunity decisions are based on the nature of the function performed, not the identity

---

and the entire action as against them *on the ground that they possess prosecutorial immunity* against Plaintiffs' claims." (emphasis added)); *id.* 6–7 ("Defendants Rapport and 'R&M' are making the same argument for prosecutorial immunity in this Court [as in the *State Court Case*].").

[2] *Imbler* and the cases that followed it discuss prosecutorial immunity in the context of actions under 42 U.S.C. § 1983. But the parties here—including, importantly, the plaintiffs—do not dispute that this immunity can bar all of the current claims. *See* Oppo. 13–17 (affirmatively applying principles of prosecutorial immunity and arguing that it does not reach this case on its facts).

7

of the actor who performed it." *Id.* at 1008 (internal quotation marks and citations omitted). In *Imbler*, the Supreme Court held that the immunity applied to a state prosecutor's actions in presenting the case in court; those actions, the Court explained, "were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force." 424 U.S. at 430. In *Burns v. Reed*, the Court held that a prosecutor enjoyed immunity for actions in a probable-cause hearing because he was acting as an advocate of the state and presenting evidence to a judge. 500 U.S. 478, 490–92 (1991). But it held that providing legal advice to police officers was not entitled to immunity. *Id.* at 494–96. In *Buckley v. Fitzsimmons*, the Court held that prosecutors carrying out investigatory actions (there, the allegation was fabrication of evidence during the investigation) and making statements at a press conference were not entitled to immunity. 509 U.S. 259, 271–78 (1993). And in *Kalina v. Fletcher*, the Court held that a prosecutor was immune for preparing an information and motion for an arrest warrant but not for executing a sworn statement about facts under penalty of perjury—because she was acting more as a witness than an advocate. 522 U.S. 118, 128–30 (1997). In each case, the Court examined both the interests undergirding the doctrine and whether the acts were "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Id.* at 126 (internal quotation marks and citation omitted).

Even though the immunity is "prosecutorial," the Supreme Court and Ninth Circuit have extended it to certain administrative and civil proceedings. In *Butz v. Economou*, the Court relied on *Imbler* to hold that agency officials were immune in a proceeding resulting from an investigation and administrative proceedings brought by the Department of Agriculture. 438 U.S. 478 (1978). The Court explained that "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." *Id.* at 515. "The decision to initiate administrative proceedings against an individual or corporation," it explained, "is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Id.* Like prosecutors, officials have "broad discretion" that "might be distorted if their immunity from damages arising from that decision was less than complete." *Id.* The Ninth

8

1    Circuit has extended the doctrine still further, holding that attorneys representing the government

2    in civil tax litigation are entitled to absolute immunity for essentially the same reasons. *Fry v.*

3    *Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991).

4    But the Ninth Circuit has declined to extend absolute immunity to *all* situations in which

5    government attorneys have brought legal proceedings.  In *Stapley v. Pestalozzi*, the court held that

6    a county attorney and deputy county attorney were not entitled to absolute immunity for filing a

7    civil RICO suit on behalf of county sheriff and county attorney.  733 F.3d 804, 810 (9th Cir.

8    2013).  The court gave two reasons that separated *Stapley* from the line of cases above.  First, the

9    attorneys' actions were not analogous to those of prosecutors because they were acting as any

10   private plaintiff could in filing a RICO suit, rather than acting in a "uniquely governmental role."

11   *Id.* at 812.  Second, the RICO suit there was not analogous to a criminal prosecution but was,

12   instead, part of a "long-running 'political war'" within the county that was premised on

13   transparently false allegations.  *Id.*

14   Applying these principles here, the Attorney Defendants are entitled to prosecutorial

15   immunity.  That is also what the California Court of Appeal held in a well-reasoned decision in its

16   related case.  *See State Court Case*, 72 Cal. App. 5th at 449.  These defendants were functioning

17   as governmental attorneys bringing an action to enforce the tribal government's rights under a

18   contract.[3]  The only allegedly unlawful acts they took were litigating the suit or, when it comes to

19   one defendant, sending a demand letter.  Those are actions "undertaken by a [governmental

20   attorney] in preparing for the initiation of judicial proceedings or for trial, and which occur in the

21   course of his role as an advocate for the State."  *Kalina*, 522 U.S. at 126 (internal quotation marks

22   and citation omitted).  Prosecuting a case in court is at the core of what the Supreme Court has

23   said is protected by the immunity.  *See, e.g.*, *id.*; *Burns*, 500 U.S. at 490–92.  A demand letter to

24   avoid suit is also closely connected to the judicial process and is a situation in which an attorney

---

[3] Though the attorneys were not government employees, immunity extends to them on the same terms because they were acting on behalf of the tribal government. *Filarsky v. Delia*, 566 U.S. 377, 390 (2012).

9

acts as an "advocate" rather than some other role. *See, e.g.*, *Milstein*, 257 F.3d at 1007 (discussing advocacy role); *cf. Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006) (holding that the sending of demand letters is sufficiently intertwined with the judicial process to receive protection under the First Amendment's Petition Clause).

Precedent also instructs that courts examine whether the rationales underlying prosecutorial immunity counsel that it should apply. *See, e.g.*, *Buckley*, 509 U.S. at 271–78. Here, they do. When the tribe's lawyers file a suit like this, they should do so focused solely on public-interest reasons, without a worry about "harassment by unfounded litigation." *Imbler*, 424 U.S. at 422–23. They should do so based on their independent judgment. *See id.*; *Milstein*, 257 F.3d at 1007. And if a judge rules against them, he or she must be able to do so "without the subconscious knowledge that such rulings could subject the [attorney] to liability," as happened here. *Milstein*, 257 F.3d at 1007.

On these facts, this conclusion is not changed by the civil nature of the underlying suit. As the Ninth Circuit has held, some civil proceedings by government lawyers will create prosecutorial immunity. *See Fry*, 939 F.2d at 837. This case, while not quite as analogous to a criminal prosecution as a tax collection suit, is still sufficiently similar because it is an attempt by the tribal government (rightly or wrongly) to enforce a contract or recover for fraudulent inducement into it. This case has neither of the salient features of *Stapley* that led the Ninth Circuit to deny immunity: The tribe was not acting as any private plaintiff could, it was vindicating rights unique to it and the current contract; and the proceeding here has sufficient similarity to a criminal prosecution for the reasons explained, unlike the unique "political war"-based suit there. *See Stapley*, 733 F.3d at 812.

The plaintiffs spend most of their argument attempting to show that the California Court of Appeal partially relied on California law and that federal law controls here. *See* Oppo. 13–17. Their substantive response is that "[n]o defendant brings argument or authority showing absolute prosecutorial immunity protects civil litigation or attorneys litigating commercial disputes, or that an extension of absolute immunity is necessary to safeguard civil or commercial affairs." *Id.* 17. As explained, *some* civil litigation is within the reach of the doctrine. *See Fry*, 939 F.2d at 837. I

10

1    nonetheless take the plaintiffs' point that this case involves an underlying *commercial* transaction,
2    unlike criminal prosecutions, administrative proceedings, or tax suits. But that commercial
3    transaction was with a sovereign. It is not just a matter of two private commercial entities carrying
4    out a dispute. The tribe is ultimately, in circumstances like these, engaging in the commercial
5    activity for a broader public purpose: the benefit of its members. As the Supreme Court has
6    explained, it has not "yet drawn a distinction between governmental and commercial activities of a
7    tribe" for purposes of sovereign immunity, a close relation to the immunity at issue here. *Kiowa*
8    *Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754–55 (1998). Private companies can
9    receive many benefits from contracting with sovereigns, but they also must face the unique risks
10   that accompany it.
11   Accordingly, the Attorney Defendants are protected by prosecutorial immunity. While that
12   conclusion is dispositive for those defendants, they requested that I also rule on their alternative
13   arguments for dismissal in the event that the Ninth Circuit disagrees with my analysis. I will do so
14   now.

15   **II.    ISSUE PRECLUSION**

16   Rapport and R&M argue that the California Court of Appeal's decision in the *State Court*
17   *Case* that they are shielded by prosecutorial immunity precludes litigation of that issue here.
18   Rapport Mot. 5–8. For the reasons that follow, I agree that Acres is subject to issue preclusion but
19   conclude that ABI is not.
20   Generally, "[t]he preclusive effect of a state court judgment in a subsequent federal lawsuit
21   generally is determined by the full faith and credit statute, which provides that state judicial
22   proceedings shall have the same full faith and credit in every court within the United States as they
23   have by law or usage in the courts of such State from which they are taken." *Marrese v. Am.*
24   *Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Under California law, "[i]ssue
25   preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the
26   second suit raises different causes of action." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813,
27   824 (2015). It applies: "(1) after final adjudication (2) of an identical issue (3) actually litigated
28   and necessarily decided in the first suit and (4) asserted against one who was a party in the first

11

1  suit or one in privity with that party." *Id.* at 825. Even when those elements are satisfied,
2  California courts "look[] to the public policies underlying the doctrine before concluding that
3  collateral estoppel should be applied in a particular setting." *Lucido v. Superior Ct.*, 51 Cal. 3d
4  335, 342–43 (1990).

5  Here, first, there was a final adjudication in the *State Court Case*: the Court of Appeal
6  firmly decided the issue, it affirmed the trial court's judgment as to these defendants, and the
7  California Supreme Court denied review. *See State Court Case*, 72 Cal. App. 5th at 452.[4] At the
8  hearing, the plaintiffs appeared to suggest that the case was not a final adjudication because the
9  state trial court did not decide the immunity issue in the first instance. But the Court of Appeal
10 concluded that the issue was properly before it and issued its opinion. That adjudication has the
11 preclusive effect that any state-court determination would.[5]

12 Next, the Court of Appeal addressed this identical issue: whether these defendants were
13 shielded on these allegations by prosecutorial immunity. It is true, as the plaintiffs counter, that
14 the Court of Appeal cited three decisions of the California Supreme Court in its reasoning. But
15 the plaintiffs read too much into those citations when they argue that that court did not at all
16 decide the issue of federal-law immunity. *See* Oppo. 15–19. The Court of Appeal largely relied
17 on the U.S. Supreme Court's teachings when making its immunity determination. It turned to the
18 California Supreme Court's decisions in one paragraph of that lengthy analysis. And it concluded
19 that California law was in harmony with federal law on this point. So, best read, the Court of
20 Appeal resolved that issue under federal and state law—with a bigger dose of the federal.

21 Third, for the reasons explained, the issue was actually litigated and necessarily decided.

---

[4] It appears that, several days ago, the plaintiffs filed a petition for writ of certiorari from the U.S. Supreme Court in the *State Court Case*. The docketing of that petition does not render the state-court judgment any less final for present purposes and the plaintiffs do not suggest otherwise. If the Supreme Court unsettles the Court of Appeal's determination on this issue, the plaintiffs have leave to file a motion for reconsideration.

[5] The plaintiffs rely on the principle that issue preclusion may not apply when the trial court's decision "evade[s] appellate review." *Samara v. Matar*, 5 Cal. 5th 322, 334 (2018). Here, review of the Court of Appeal's decision is fully available at least because the plaintiffs can (and did) seek review from the California Supreme Court through normal procedures.

The plaintiffs' only counterargument is the same one already rejected that the trial court did not rule on this issue.

Fourth, Acres is the same party as in the *State Court Case*, satisfying the last element against him. I agree with the plaintiffs, however, that ABI is not similarly precluded. While ABI may, in some scenarios, be determined to be in privity with Acres because it was created solely by him and he is the only individual in charge of it, I will not apply issue preclusion here. Privity for preclusion purposes requires "'adequate representation' of that interest in the first suit, and circumstances such that the nonparty should reasonably have expected to be bound by the first suit." *DKN Holdings*, 61 Cal. 4th at 826 (internal quotation marks and citation omitted). ABI was not a party in the *State Court Case* and Acres was proceeding pro se there. ABI is an entity with a separate legal identity from Acres and is represented by counsel in this suit. Acres is an effective advocate for himself. But I decline to find that ABI was "adequately represented" by him as an unrepresented party.

Last, I examine the rationale underlying the preclusion doctrine to determine whether it should be applied to Acres. *Lucido*, 51 Cal. 3d at 342–43. Here, applying issue preclusion promotes judicial economy and prevents duplicative litigation of the same issue. *See id.* at 343 (identifying these as reasons for the doctrine). The plaintiffs primarily respond that they are not engaged in vexatious litigation, the prevention of which is one other goal of the doctrine. I do not hold that they are, but other values enforced by the doctrine support applying it here.

### III.  LITIGATION PRIVILEGE

Rapport, and R&M argue that the litigation privilege shields them from liability for the state-law claims. *See* Rapport Mot. 9–10.[6] I conclude that the privilege does not apply to the wrongful use of civil process claim (or its related inchoate claims). But based on the lack of dispute about the other state-law claims, I agree that it would prevent litigation of them.

California Civil Code § 47(b) renders privileged a "publication or broadcast" made, among

---

[6] The Boutin Jones Defendants argue in a several-sentence footnote that their conduct is also shielded. *See* Boutin Jones Mot. 15 n.1. Ordinarily, and especially against a pro se party, I would not consider that argument sufficiently developed to address. But the same reasoning in-text certainly applies to the Boutin Jones defendants.

other things "[i]n any ... judicial proceeding." When it applies, the privilege is absolute. *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 780 (2017). "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990). The privilege exists "to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 152 (2013) (internal quotation marks, alteration, and citations omitted).

The privilege, however, does not shield against actions for malicious prosecution. *See Kilgore v. Younger*, 30 Cal. 3d 770, 778 (1982); *Silberg*, 50 Cal. 3d at 212. And the wrongful use of civil proceeding tort alleged here is a type of malicious prosecution action. *See* 5 Witkin, Summary of California Law (10th ed. 2005) Torts, § 486.

The plaintiffs do not dispute that the privilege would bar the other state-law claims. And were it not for the malicious-prosecution exception, all of the underlying actions here by the attorneys appear to meet the test for application of the privilege. *See Silberg*, 50 Cal. 3d at 212. Based on that, and the lack of argument otherwise, I conclude that they are protected.

## IV. STATUTE OF LIMITATIONS

The Attorney Defendants all argue that the state-law claims against them are time-barred by the one-year statute of limitations for certain actions against attorneys. *See* Rapport Mot. 8–9; Janssen Malloy Mot. 13–15; Boutin Jones Mot. 12–15. The plaintiffs reply that that statute of limitations does not apply and, instead, the default two-year period for torts does, making their claims timely. *See* Oppo. 22–24. They do not dispute that the claims accrued more than one year before they filed suit. *See id.* I conclude that all state-law claims except the constructive fraud claim (and its inchoate claims) are time-barred. That one may be as well, but the defendants have not met their burden to show it at this point.

A motion to dismiss based on a statute of limitations can only be granted when its running "is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997

(9th Cir. 2006) (internal quotation marks and citation omitted). Under California law,

> An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.

Cal. Civ. P. Code § 340.6. The California Supreme Court has held that this time bar "applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services." *Lee v. Hanley*, 61 Cal. 4th 1225, 1236–37 (2015). A professional obligation is "an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the Rules of Professional Conduct." *Id.* at 1237.

The consensus view of the California Courts of Appeal—in thorough opinions that considered the precise issue against challenge—is that claims for malicious prosecution against attorneys fall within this time-bar. *See Garcia v. Rosenberg*, 42 Cal. App. 5th 1050, 1060 (2019); *Connelly v. Bornstein*, 33 Cal. App. 5th 783, 799 (2019); *Yee v. Cheung*, 220 Cal. App. 4th 184, 197 (2013); *Vafi v. McCloskey*, 193 Cal. App. 4th 874, 880 (2011). Although one Court of Appeal had previously decided to the contrary, *see Roger Cleveland Golf Co. v. Krane & Smith, APC*, 225 Cal. App. 4th 660, 676 (2014), the California Supreme Court's decision in *Lee* expressly noted that its reasoning on that issue was in tension with it and disapproved of it to that extent, *see Lee*, 61 Cal. 4th at 1239. In the absence of a holding from the California Supreme Court, I am obligated to follow the Court of Appeal's decisions on interpretations of state law unless I were convinced they were contrary to what the Supreme Court would decide. *See N.L.R.B. v. Calkins*, 187 F.3d 1080, 1089 (9th Cir. 1999). Accordingly, the wrongful use of civil process claims (and its inchoate torts) are time-barred.

The claims for breach of fiduciary duty (and its inchoate torts) against the attorneys are likewise subject to the one-year statute of limitations because they arise from attorneys' professional obligations in the course of providing professional services. *See Graham-Sult v.*

15

*Clainos*, 756 F.3d 724, 747 (9th Cir. 2014) (holding that breach of fiduciary duty is subject to the time-bar).

The claim for constructive fraud (and its inchoate torts) will not be dismissed at this stage for this reason. As noted, the statute exempts "actual fraud" from its shortened limitations period. Cal. Civ. P. Code § 340.6. Although one court has held that the "the exception for actual fraud in section 340.6 was intended to apply to intentional fraud, not constructive fraud resulting from negligent misrepresentation," *Quintilliani v. Mannerino*, 62 Cal. App. 4th 54, 69 (1998), *as modified on denial of reh'g* (Apr. 2, 1998), the acts here are alleged to be intentional not simply negligent. The defendants have therefore not carried their burden at this stage to show that the claim is time-barred.

## V. RICO CLAIM

The defendants all move to dismiss the RICO claim against them for failure to state a claim. *See* Boutin Jones Mot. 10–12; Janssen Malloy Mot. 9–13; Rapport Mot. 10–14. Because I grant the motions to dismiss of all defendants except Ramsey and Frank on other grounds, this determination is most relevant to them. I agree the claim is inadequate as currently pleaded; it is dismissed with leave to amend.

"The RICO statute sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt. In addition, the conduct must be (5) the proximate cause of harm to the victim." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citations omitted).

The defendants make several interrelated challenges, but many turn on whether adequate predicate acts are alleged. They are not. The plaintiffs have not identified any predicate acts, or a pattern of them with sufficient clarity. "Racketeering activity, the fourth element, requires predicate acts." *Eclectic*, 751 F.3d at 997. The plaintiffs point to two alleged predicate acts: (1) mail or wire fraud and (2) obstruction of justice. Oppo. 9–11.

The mail and wire fraud predicate is inadequately pleaded. "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain

16

three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic*, 751 F.3d at 997. But the only paragraphs of the complaint that the plaintiffs point to support this assertion do not show fraud, much less with the specificity required to satisfy Rule 9(b). At most, they detail that the defendants traded litigation documents among themselves.

The obstruction of justice claim is also inadequately pleaded. The only "obstruction" the plaintiffs identify concretely is a declaration Judge Marston filed in this court that they contend was misleading because it stated that he was not an attorney for Blue Lake even though he had finished representing them eleven days earlier. They make no attempt to show how this would be obstruction of justice under 18 U.S.C. § 1503, which generally requires the manipulation of a tribunal be done (at best) "corruptly." They also make no attempt to tie this declaration to Ramsey and Frank. And although they vaguely reference "other filings," they are required to show what those are with specificity.

They have leave to amend to flesh out these allegations. At that point, it will also be possible to address Ramsey and Frank's full and more focused arguments for dismissal.

## CONCLUSION

The motions to dismiss by all defendants except Ramsey and Frank are GRANTED WITH PREJUDICE and they are DISMISSED from the case. The RICO claim against Ramsey and Frank is DISMISSED WITH LEAVE TO AMEND. An amended complaint shall be filed within 20 days.

**IT IS SO ORDERED.**

Dated: June 3, 2022

William H. Orrick
United States District Judge