UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ACRES BONUSING, INC, et al.,

      Plaintiffs,

  v.

ARLA RAMSEY, et al.,

      Defendants.

Case No. 19-cv-05418-WHO

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 96

**INTRODUCTION**

Over a decade ago, plaintiffs James Acres and Acres Bonusing, Inc. entered into a contract with the Blue Lake Casino & Hotel—a tribally owned entity of the Blue Lake Rancheria ("Blue Lake"), a federally recognized tribe—to provide a gaming platform for Blue Lake's casino. The deal allegedly went south and the Blue Lake Casino & Hotel brought suit against the plaintiffs in tribal court. Here, the plaintiffs allege that the prosecution of the tribal suit and related actions gave rise to claims for misuse of process, breach of fiduciary duty, fraud, and racketeering activity.

After a trip to the Ninth Circuit and another round of motions to dismiss, the case before me has significantly narrowed. Of the seventeen defendants originally named in plaintiffs' complaint, all but two have been dismissed with prejudice. The final two defendants, Arla Ramsey and Thomas Frank, now move to dismiss the First Amended Complaint for failure to state a claim and several different immunities. I conclude that it is not plausible that the alleged acts of these defendants (such as paying the tribal court judge who also was an attorney for Blue Lake for services rendered or verifying discovery responses) constitute bribery or state any of the four claims asserted. And both defendants are shielded by personal immunity defenses: Ramsey is

United States District Court
Northern District of California

United States District Court
Northern District of California

entitled to qualified immunity and discretionary act immunity, and Frank is entitled to qualified immunity and the protection of the litigation privilege under California law.

As a result, all claims against both defendants are dismissed. Because I am dismissing the case without leave to amend and this matter has already gone once to the Ninth Circuit, this Order addresses all of the issues raised in the motion.

## BACKGROUND

### I.   THE COMMERCIAL DISPUTE AND ENSUING LITIGATION

Acres owns ABI, a gaming company. First Amended Complaint ("FAC") [Dkt. No. 90] ¶ 8. Blue Lake is a federally recognized tribe in Humboldt County, California. *Id.* ¶¶ 1, 9. It owns and operates the Blue Lake Casino & Hotel ("Blue Lake Casino" or "the Casino"). *Id.* ¶ 12. Defendant Arla Ramsey was its CEO, a judge of Blue Lake's tribal court, and vice-chair of the tribe's business council. *Id.* ¶ 13. Defendant Thomas Frank was an executive of the Casino and sometimes an officer of the tribe. *Id.* ¶ 14.

In 2010, Blue Lake Casino and ABI entered into an agreement that called for the Casino to purchase iSlot, an iPad-based gaming platform, from ABI for $250,000. *Id.* ¶ 44. In 2011 and 2013, Blue Lake and ABI were in discussions for Blue Lake to acquire nationwide distribution rights to iSlot, to which ABI ultimately did not agree. *Id.* ¶ 45. In August 2015, former defendant Daniel Stouder, an attorney at Boutin Jones, sent ABI a letter on behalf of Blue Lake Casino demanding that ABI pay approximately $320,600 to avoid legal action related to the iSlot agreement. *Id.* ¶¶ 25, 48. Stouder indicated that Frank was copied on the demand letter. *Id.* ¶ 48. According to the plaintiffs, the iSlot agreement expired in October 2012. *Id.* ¶ 47.

The commercial dispute between ABI and Blue Lake eventually led to litigation: in January 2016, Blue Lake initiated a case in its judicial arm, the Tribal Court of the Blue Lake Rancheria ("the Tribal Court"), over the agreement. *Id.* ¶¶ 5, 11, 52; *see also* Dkt. No. 90-1 (complaint in *Blue Lake Casino & Hotel v. Acres et al.*, Blue Lake Tribal Court Case No. 15-1215IJM ("*Tribal Court Case*")). The complaint in the *Tribal Court Case* alleged claims against ABI and Acres for breach of contract, tortious breach of implied covenant of good faith and fair dealing, unjust enrichment, money had and received, and fraudulent inducement. Dkt. No. 90-1.

2

United States District Court
Northern District of California

1   Former defendant Lester John Marston was the judge in the *Tribal Court Case*.  FAC ¶ 16.

2   Marston eventually recused himself and was replaced by James Lambden, a retired justice of the

3   California Court of Appeal ("Justice Lambden").  *Id.* ¶ 31.  According to Acres, Marston did so

4   due to conflicts of interest, including that he was the tribe's attorney.

5       Acres filed two suits in federal court to enjoin the *Tribal Court Case*.  In the first, I

6   dismissed the suit for failure to exhaust tribal-court remedies.  *Acres v. Blue Lake Rancheria*

7   *Tribal Court*, No. 16-cv-02622-WHO, 2016 WL 4208328 (N.D. Cal. Aug. 10, 2016).  In the

8   second, I granted limited discovery on whether the bad-faith exception to tribal-court exhaustion

9   applied based on Acres's allegations that Judge Marston failed to disclose conflicts of interest.

10  *See Acres v. Blue Lake Rancheria*, No. 16-cv-05391-WHO, 2017 WL 733114, at *1 (N.D. Cal.

11  Feb. 24, 2017).  But I ultimately dismissed that action for failure to exhaust, *see id.* at *3, and the

12  Ninth Circuit affirmed that dismissal, *Acres v. Blue Lake Rancheria*, 692 F. App'x 894 (9th Cir.

13  2017).

14      In the *Tribal Court Case*, Justice Lambden granted summary judgment to Acres and

15  dismissed him from the suit in July 2017.  FAC ¶ 5; *id.*, Ex. 2.  Justice Lambden later dismissed

16  the suit.  *Id.* ¶ 5; *id.* at Ex. 3.

17      Although the dismissal of the *Tribal Court Case* concluded the commercial dispute

18  between ABI and Blue Lake, in July 2018, Acres filed a malicious prosecution suit in California

19  state court that was "substantially similar" to this suit.  Order Granting Motions to Dismiss ("Prior

20  Order") [Dkt. No. 65] at 4.  The Superior Court dismissed the suit on sovereign immunity and

21  judicial immunity or quasi-judicial immunity grounds; last year, the Court of Appeal affirmed in

22  part and reversed in part in a published opinion.  *See Acres v. Marston*, 72 Cal. App. 5th 417

23  (2021), *as modified on denial of reh'g* (Dec. 10, 2021) ("*State Court Case*").  Its holding is

24  described in greater detail below.  In February 2022 and October 2022, the California Supreme

25  Court and Supreme Court denied respective petitions for review.  *See Acres v. Marston*, 72 Cal.

26  App. 5th 417, 429 (2021), *as modified on denial of reh'g* (Dec. 10, 2021), *review denied* (Feb. 23,

27  2022), *cert. denied*, 2022 WL 4651735 (U.S. Oct. 3, 2022) (No. 21-1480).

28

## II.     THE INSTANT CASE

Acres and ABI filed this case in August 2019 against seventeen defendants.  Dkt. 1.  They brought claims for wrongful use of civil proceedings (and aiding and abetting and conspiracy), breach of fiduciary duty (and aiding and abetting), constructive fraud, and violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.  *Id.*

In March 2020, I granted the defendants' motions to dismiss.  *See* Prior Order.  I found that "all of the defendants were functioning as the Tribe's officials or agents when the alleged acts were committed" and were consequently shielded from suit by sovereign immunity.  *Id.* at 7.  In the alternative, I found that Judge Marston, Ramsey, Frank, Rapport, DeMarse, Burrell, Vaughn, and Lathouris were shielded by judicial immunity or quasi-judicial immunity.  *Id.* at 14.  Because I dismissed the case in its entirety, I denied concurrently filed anti-SLAAP motions from the defendants (and a motion to strike those motions from the plaintiffs).  *Id.* at 2.

In November 2021, the Ninth Circuit affirmed on the issue of judicial immunity and reversed on the issue of sovereign immunity.  *Acres Bonusing, Inc v. Marston*, 17 F.4th 901 (9th Cir. 2021) ("*Ninth Circuit Op.*").  It found that sovereign immunity did not shield any of the defendants from suit because the tribe was not the real party in interest.  *Id.* at 908.  It further held that Judge Marston, his law clerks, and the court clerk were entitled to judicial immunity.  *Id.* at 916.  And it held that Ramsey, Frank, Rapport, and R&M were not entitled to judicial or quasi-judicial immunity.  *Id.*

Following the Ninth Circuit's mandate in December 2021, Dkt. No. 72, the remaining eleven defendants again moved to dismiss.  Dkt. Nos. 78–80.  At this point, defendants consisted of various lawyers and law firms that represented the tribe in the *Tribal Court Case*, and two tribal executives—Ramsey and Frank.  *Id.*

In June 2022, I granted the motion to dismiss for all remaining defendants.  Dkt. No. 89.  I concluded that the lawyers and law firms were shielded from liability by prosecutorial immunity.  *Id.* at 1.  I also granted Ramsey's and Frank's motion to dismiss the racketeering claim because no plausible racketeering activity had been alleged.  *Id.*  I gave plaintiffs leave to "flesh out" their allegations for the RICO claim.  *Id.* at 17.

United States District Court
Northern District of California

1    Later that month, plaintiffs filed the FAC, which is the operative pleading in this case.

2    Dkt. No. 90.  In the FAC, ABI brings claims for wrongful use of civil proceedings, aiding and

3    abetting breach of fiduciary duty, aiding and abetting constructive fraud, and violation of RICO

4    against Ramsey and Frank, the sole remaining defendants.  FAC ¶¶ 155, 166, 182, 190.  Acres

5    joins ABI in the RICO claim alone.[1]  *Id.* ¶ 190.

6    Former defendant Marston and the *Tribal Court Case* form the core of plaintiffs' four

7    causes of action.  Plaintiffs allege that Marston's dual roles as a judge of the Tribal Court and as

8    personal legal counsel for Blue Lake Casino and other Blue Lake officials during the *Tribal Court*

9    *Case* constituted a "corrupt judicial scheme" that benefited the Tribe and its officials, including

10   Ramsey.  *See* FAC ¶¶ 134–39.  Plaintiffs explain the "corrupt scheme" as follows: (1) Ramsey and

11   the Tribe gave Marston opportunities to be paid for both judicial and non-judicial work; and (2)

12   Marston sent invoices to Blue Lake for judicial and non-judicial work.  *Id.* ¶¶ 134(e) and (g).

13   Plaintiffs claim that Marston billed for judicial and non-judicial work on the same invoices to

14   conceal the payment of bribes from Blue Lake to Marston.  *Id.* ¶ 134(g).

15   Some points of clarification are in order regarding plaintiffs' theories of corruption and

16   bribery.  Plaintiffs do not allege that Marston fraudulently billed Blue Lake for work that he did

17   not undertake.  In fact, plaintiffs allege that in addition to Marston's duties as a tribal judge,

18   Marston represented Blue Lake as a negotiator in negotiating a gaming compact with California,

19   advised Blue Lake on taking land into trust and establishing an energy company, and represented

20   Ramsey as a personal attorney in separate litigation, among myriad other things.  *See id.*

21   ¶¶ 138(j)–(l).  Nor do plaintiffs allege that Marston was somehow not entitled to seek payment for

22   the judicial and non-judicial services that he rendered to Blue Lake.  Rather, plaintiffs ground their

23   theory of corruption on the facts that Marston allegedly billed for judicial and non-judicial work

24   on the same invoices and subsequently allegedly provided judicial outcomes favorable to Ramsey

25

26   _____

27   [1] In the *State Court Case*, Acres pursued the first three causes of action—for wrongful use of civil proceedings and the aiding and abetting claims—against both Ramsey and Frank.  *State Court Case*, 72 Cal. App. 5th at 428.

28

5

and her interests. *Id.* ¶¶ 138(g) and (j).

Ramsey allegedly participated in this "corrupt judicial scheme" by approving payment of Marston's billing invoices for his dual judicial and prosecutorial legal services, which plaintiffs characterize as bribery and mail fraud under RICO. *Id.* ¶¶ 145–53. Ramsey further appointed substitute counsel in the *Tribal Court Case.* *Id.* ¶ 111. As for Frank, plaintiffs allege that Frank participated in this scheme by verifying Blue Lake's written discovery responses and executing supporting declarations in the *Tribal Court Case*. *Id.* ¶ 122. Plaintiffs further allege that Frank, under the direction of Ramsey, arranged to bring the *Tribal Court Case* before the Tribal Court, and that Frank was copied on a demand letter sent to ABI. *Id.* ¶¶ 48, 194. These allegations represent the entirety of the complained-of conduct with regard to Ramsey and Frank.

On July 29, 2022, Ramsey and Frank, the last two remaining defendants, moved to dismiss. *See* Motion to Dismiss ("Mot.") [Dkt. 96]. Defendants argue that the FAC fails to state sufficient facts to support the four causes of action against defendants. Mot. at 1. They also invoke seven different types of personal immunities, which defendants contend shield them from suit. *See id*. at 2 (Table of Applicable Immunity). After full briefing and argument, my ruling follows.

## LEGAL STANDARD

### I.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

United States District Court
Northern District of California

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."  *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## II.     MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to the court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested.  *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction.  *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal.  *See Wolfe*, 392 F.3d at 362.

1        "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

2   themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.  To resolve

3   this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

4   (citation omitted).  Instead, the court "may review evidence beyond the complaint without

5   converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted).

6   Once the moving party has made a factual challenge by offering affidavits or other evidence to

7   dispute the allegations in the complaint, the party opposing the motion must "present affidavits or

8   any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses

9   subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also*

10  *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

## DISCUSSION

12       Defendants move to dismiss on the grounds of failure to state a claim and seven different

13  types of personal immunities.  I address each issue below, beginning with the question of whether

14  plaintiffs sufficiently pleaded their claims.

## I.   FAILURE TO STATE A CLAIM

16       As discussed below, I dismiss all four claims in the FAC because they fail to state a claim

17  upon which relief can be granted.  The wrongful use of civil proceedings claim is deficiently

18  pleaded as to both defendants, and the aiding and abetting and RICO claims fail as a matter of law.

### A.  Claim 1: Wrongful Use of Civil Proceedings.

20       ABI brings a wrongful use of civil proceedings claim[2] based on the *Tribal Court Case* that

21  Blue Lake initiated against ABI and Acres in January 2016.  FAC ¶¶ 154–164.  To succeed on this

22  claim, ABI must prove: (1) Ramsey and Frank were actively involved in bringing or continuing

23  the lawsuit; (2) the lawsuit ended in ABI's favor; (3) no reasonable person in Ramsey's or Frank's

24  circumstances would have believed that there were reasonable grounds to bring the lawsuit against

25  ABI; (4) Ramsey and Frank acted primarily for a purpose other than succeeding on the merits of

26  the claim; and (5) Ramsey's and Frank's conduct was a substantial factor in causing harm to ABI.

---

[2]  The wrongful use of civil proceedings tort alleged here is a type of malicious prosecution action.  *See* 5 Witkin, Summary of California Law (11th ed. 2022) Nature of Tort, § 571.

United States District Court
Northern District of California

*See* CACI No. 1501; *see also Goldstein v. Dobashi*, No. A146164, 2018 WL 3640714, at *2 (Cal. Ct. App. Aug. 1, 2018) (listing elements of a claim for wrongful use of civil proceedings). Defendants attack the first, third, and fourth elements in the claim for lack of factual support. Mot. at 19–20. I find that the first element is plausibly alleged but that ABI fails to establish the third or fourth elements.

### 1. The FAC sufficiently alleges that Ramsey and Frank were actively involved in bringing or continuing the lawsuit.

Although the showing on the first element is weak, I conclude that the FAC alleges just enough to plausibly show that Ramsey and Frank were "actively involved" in continuing the lawsuit. Neither Ramsey nor Frank were parties to the *Tribal Court Case*, and the FAC does not allege that either defendant had the authority to authorize the filing or maintenance of the lawsuit. But both Ramsey and Frank took steps to continue the litigation: Ramsey appointed new counsel to replace the Tribe's counsel and Frank verified Blue Lake's discovery responses and submitted declarations in support of Blue Lake. *See* FAC ¶¶ 111, 122. These actions indicate that the defendants were at least minimally involved in the litigation during the pendency of the case. Defendants have not provided any authority indicating that this conduct is insufficient.

Drawing all reasonable inferences in plaintiffs' favor, the FAC plausibly alleges that Ramsey and Frank were actively involved in continuing the lawsuit. As a result, the first element is satisfied.

### 2. The FAC does not sufficiently allege that no reasonable person in defendants' position would have believed there were reasonable grounds to sue.

ABI's claim falters on the third element. The FAC does not plausibly allege that no reasonable person in Ramsey's or Frank's position would have believed that there were reasonable grounds to sue ABI.

Based on the pleadings, the *Tribal Court Case* appears to be a fairly standard commercial dispute over the terms of the iSlot gaming system agreement.[3] According to the *Tribal Court*

---

[3] The FAC sets forth a factual chronology preceding Blue Lake's initiation of the *Tribal Court Case*. FAC ¶¶ 43–53. The facts leading up to the initiation of the lawsuit are also alleged in the *Tribal Court Case*

United States District Court
Northern District of California

*Case* complaint, the terms of the iSlot agreement required ABI to "service, support maintain, and upgrade the iSlot gaming system," but that the "iSlot system provided by ABI was a failure," "the iSlot gaming devices generated virtually no income," and "[o]perating costs incurred by [the Tribe] outweighed any income generated by the iSlot System and devices." *See* Tribal Court Complaint [Dkt. 90-1] ¶¶ 6, 8. In particular, the complaint alleged that ABI "refused to upgrade and improve the iSlot system" despite provisions of the agreement which required it to do so. *Id.* ¶ 10. After ABI eventually terminated the iSlot agreement, Blue Lake attempted to recover the advance deposit of $250,000. *Id.* ¶¶ 11–12; *see also* FAC ¶¶ 48–50, 52 (describing Blue Lake's pre-suit efforts to recover the advance deposit). After trying and failing to resolve the matter out of court, Blue Lake eventually brought four causes of action against ABI: breach of contract, tortious breach of the implied covenant of good faith and fair dealing, unjust enrichment, and money had-and-received. Tribal Court Complaint ¶¶ 13–32. In addition to the contract and quasi-contract claims brought against ABI, Blue Lake also brought a fifth claim for fraudulent inducement against Acres. *Id.* ¶¶ 33–43.

Against this familiar backdrop of dashed hopes and lost profits, ABI offers sparse reasons and fewer facts to explain why—in its view—no reasonable person would have filed suit against ABI. Instead, ABI points to Justice Lambden's order finding that Blue Lake Casino could not establish the reasonable reliance element of its fraud claim against Acres. Opp. at 18 (quoting Ex. 2 [Dkt. 90-2] at 17). But Justice Lambden's ruling with regard to one element of the *fraud* claim against *Acres* does not show that *no reasonable person* would have believed that there were grounds to sue *ABI* over the alleged breach of the iSlot Agreement. And Acres is not a party to the wrongful use of civil proceedings claim. FAC ¶ 155.

Putting the fraud claim to the side, ABI has not shown that the breach of contract and quasi-contract claims are objectively unreasonable. If, for instance, ABI breached its contractual obligations to upgrade the iSlot system, or if Blue Lake believed that ABI had made certain representations regarding the iSlot agreement, Blue Lake's decision to file suit appears defensible

---

complaint, which is attached as an exhibit to the FAC. *See* Dkt. 90-1. The *Tribal Court Case* summary judgment order and the judgment of dismissal are also exhibits to the FAC. *See* Dkt. 90-2 and 90-3.

and ABI does not offer any reasons to the contrary.  That Blue Lake ultimately chose to dismiss its claims against ABI does not mean that the claims were per se unreasonable or give rise to a malicious prosecution claim.  *Cf. Est. of Tucker ex rel. Tucker v. Interscope Recs., Inc.*, 515 F.3d 1019, 1035–36 (9th Cir. 2008) (noting that California courts have encouraged timely dismissals and finding that two voluntary dismissals did not establish malicious prosecution claim).  Other than the summary judgment ruling with the fraud claim, ABI does not identify any other facts to support its theory that no reasonable person in Ramsey's or Frank's circumstances would have believed that there were reasonable grounds to bring the lawsuit against ABI.

Because the FAC does not plausibly allege that no reasonable person in Ramsey's or Frank's position would have believed that there were grounds to sue ABI, ABI has failed to establish this element of the claim.

### 3. The FAC does not sufficiently allege that defendants acted primarily for an improper purpose.

The fifth element of the claim also fails because the FAC does not plausibly allege that Ramsey or Frank pursued the *Tribal Court Case* primarily for an improper purpose.  The FAC generally alleges that Ramsey and Frank "brought or continued the *Blue Lake v. ABI* claim against ABI for reasons other than succeeding on the merits of the claim," FAC ¶ 159, but this conclusory allegation is belied by other allegations in the FAC, which claim that Ramsey's asserted interest in the litigation was generally in her role as CEO of Blue Lake Casino.  *Id.* ¶ 136(f).

In its opposition, ABI identifies various facts which—according to ABI—lead to an inference of an improper purpose.  Opp. at 19.  In particular, ABI points to Justice Lambden's summary judgment ruling, the "bribes paid to Judge Marston," Blue Lake's eventual dismissal of the case following summary judgment, and "the physical and procedural intimidation to which Acres and ABI were subjected within the tribal court."  Opp. at 19.  The problem with ABI's argument is that none of these allegations (with the exception of the "bribes") is particular to *Frank* or *Ramsey*.  *See* FAC ¶¶ 54–67, 82, Dkt. 90-2.  As a result, these facts do not show that *Frank* or *Ramsey*'s involvement in the case was primarily for an improper purpose.

And while the FAC portrays the billing invoices as "bribes," this characterization itself

requires several inferential leaps based on conduct that could just as plausibly be innocuous. The FAC asserts that Judge Marston and Blue Lake were corruptly in cahoots because: (1) Ramsey and the Tribe gave Marston opportunities to be paid for both judicial and non-judicial work; and (2) Marston sent invoices to Blue Lake for judicial and non-judicial work. FAC ¶¶ 134(e) and (g). Plaintiffs claim that Marston billed for judicial and non-judicial work on the same invoices to conceal the payment of bribes from Blue Lake to Marston. *Id.* ¶ 134(g). In plaintiffs' view, Ramsey's payment of the billing invoices therefore constituted bribery and mail fraud under RICO. *Id.* ¶¶ 145–53. But this chain of inferences is rooted in the premise that Judge Marston and Blue Lake were corrupt, for which no allegations provide support. Without that premise, the billing invoices are just billing invoices from a lawyer in whom the tribe had confidence to handle both judicial and non-judicial legal work, Ramsey paid the invoices because that fell under her purview as a tribal executive, and plaintiffs' case collapses. Without something more concrete to anchor ABI's allegations of an improper motive, Ramsey's payment of the billing invoices alone does not demonstrate an improper motive.

Because the FAC fails to plead sufficient facts and instead relies on unreasonable inferences to allege that Ramsey and Frank primarily acted for an improper purpose, ABI has failed to establish this element of the claim. ABI's wrongful use of civil proceedings claim stretches too far with evidence that does not plausibly support its claim. The allegations undergirding the third and fourth elements do not state a claim. The wrongful use of civil proceedings claim is **DISMISSED**.

### B. Claims Two and Three: the Aiding and Abetting Breach of Fiduciary Duty and Constructive Fraud Claims.

Next, ABI brings aiding and abetting claims against Ramsey and Frank under the theory that Judge Marston breached his fiduciary duty to ABI by serving as the presiding judge in the *Tribal Court Case* while also performing non-judicial work for Blue Lake and Ramsey. FAC ¶¶ 165–189. To state these claims, ABI must show that: (1) Ramsey and Frank knew that Judge Marston was committing a tort against ABI; (2) Ramsey and Frank gave substantial assistance or encouragement to Judge Marston; and (3) Ramsey and Frank's conduct was a

United States District Court
Northern District of California

substantial factor in causing ABI's harm.  *See* CACI 3610; *see also Stubblefield v. City of Novato*, No. 15-cv-03372, 2016 WL 192539, at \*7–8 (N.D. Cal. Jan. 15, 2016) (listing the elements for an aiding and abetting tort claim).  Defendants challenge both claims on the basis that (1) ABI has not shown that Marston committed an underlying tort, and (2) ABI has not shown that Ramsey's and Frank's conduct were substantial factors in causing ABI's harm.  Mot. at 21.  I address both arguments below.

### 1.    The FAC Does Not Allege that Judge Marston Committed a Tort against ABI.

For Ramsey and Frank to be liable, ABI must show that Ramsey and Frank knew that Judge Marston was committing a tort (here, breach of fiduciary duty and constructive fraud) against ABI.  *Stubblefield*, 2016 WL 192539, at \*7–8.  Plaintiffs acknowledge that the existence of a fiduciary relationship between ABI and Marston is foundational to both claims.  *See* FAC ¶¶ 6 ("Several claims for relief relate to a breach of fiduciary duty by Judge Marston against ABI."); 166 ("ABI claims Judge Marston breached his fiduciary duty to ABI."); 178 ("A fiduciary relationship existed between Judge Marston and ABI upon which ABI justifiably relied to its detriment.").  The aiding and abetting causes of action fail as a matter of law because they rely on the incorrect premise that Marston was in a fiduciary relationship with ABI.

There is no legal authority recognizing a fiduciary relationship between Marston, as a presiding judge, and ABI, as a litigant appearing before him.  ABI's reliance on *United States v. Holzer* is misplaced for several reasons.  *See* FAC ¶ 167, Opp. at 19–20.  *Holzer* involved a federal criminal prosecution against a state court judge in Cook County who had been convicted of mail fraud, extortion, and RICO violations for seeking "loans" from litigants and attorneys who appeared before him; these "loans" were not disclosed to other counsel appearing before him.  *United States v. Holzer*, 816 F.2d 304, 305–07 (7th Cir.), *cert. granted, judgment vacated*, 484 U.S. 807 (1987).  In reasoning that the judge had committed fraud, the Seventh Circuit stated that:

> Fraud in its elementary common law sense of deceit—and this is one of the meanings that fraud bears in the statute, see *United States v. Dial*, 757 F.2d 163, 168 (7th Cir.1985)—includes the deliberate concealment of material information in a setting of fiduciary obligation.  *A public official is a fiduciary toward the public, including,*

United States District Court
Northern District of California

> *in the case of a judge, the litigants who appear before him, and if he deliberately conceals material information from them he is guilty of fraud.* When a judge is busily soliciting loans from counsel to one party, and not telling the opposing counsel (let alone the public), he is concealing material information in violation of his fiduciary obligations.

*Id.* at 307 (emphasis added). So while it is true that *Holzer* suggested that a judge "is a fiduciary to the public," nothing in *Holzer* authorizes a private cause of action against a judge for breach of fiduciary duty or lawsuits against other government officials for allegedly aiding and abetting such a breach of fiduciary duty. And as defendants point out, the Seventh Circuit's decision in *Holzer* was subsequently vacated and remanded for further consideration in light of an intervening decision interpreting the mail fraud statute. *Holzer v. United States*, 484 U.S. 807 (1987). The Seventh Circuit's subsequent decision on remand does not include the language emphasized above. *United States v. Holzer*, 840 F.2d 1343 (7th Cir. 1988). *Holzer* is of no use to ABI, and ABI has not cited any other authorities to support its novel theory.

It is difficult to imagine how a fiduciary relationship between a judge and a litigant could exist. "[A] fiduciary relationship is a recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client[.]" *Richelle L. v. Roman Cath. Archbishop*, 106 Cal. App. 4th 257, 271 (2003), *as modified* (Mar. 17, 2003). "The creation of a fiduciary obligation or duty must, at a minimum, arise from facts demonstrating the formation of a confidential relationship." *Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 586 (2005) (citation omitted). But a "confidential relationship" between a judge and a party is antithetical to the tenets of objectivity and transparency of which judges are bound. *See, e.g.*, Code of Conduct for United States Judges Canon 3(A)(4) (explaining that "a judge should not initiate, permit, or consider ex parte communications" except in limited circumstances); *id.* at Canon 3(C)(1) ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned," including instances where the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding"). Because ABI's aiding and abetting claims are premised on the existence of a fiduciary relationship between Judge Marston and ABI, these claims fail as a matter of law.

### 2. The FAC Does Not Sufficiently Allege that Ramsey and Frank Were Substantial Factors in Harming ABI.

While the lack of a fiduciary relationship alone dooms ABI's aiding and abetting claims, I turn to defendants' second argument that the aiding and abetting claims also fail because the FAC does not sufficiently allege that Ramsey and Frank were a "substantial factor" in causing ABI's harm. Mot. at 22–23. Its theory is based on the following facts: Ramsey appointed substitute counsel and approved Marston's billing invoices, *see* FAC ¶¶ 111, 134, 145–47; and Frank verified discovery responses and supporting declarations. *Id.* ¶ 122.

While I previously concluded that those facts (barely) established that Ramsey and Frank continued the *Tribal Court Case*, it does not follow that this conduct constitutes a substantial factor in the harm that ABI allegedly experienced. To the extent that the FAC implies that Ramsey or Frank were involved in Judge Marston's decision to preside over the *Tribal Court Case*, *see id.* ¶¶ 193–94, the FAC pleads otherwise by alleging that under Blue Lake Tribal Court rules, "the administrative decision of whether to preside over the case himself, or assign the case to another judge, fell to Judge Marston." *Id.* ¶ 34. Because ABI has not provided any authority suggesting that the minimal acts described here constitute "substantial factors" in the harm that ABI experienced, I conclude that ABI has not established this element.

ABI's aiding and abetting claims are fatally deficient. Because the claims are grounded in the incorrect premise that Judge Marston owed a fiduciary duty to ABI, the claims fail as a matter of law. And the claims are factually insufficient because ABI has not plausibly pleaded that Ramsey and Frank were substantial factors in causing harm to ABI. The aiding and abetting breach of fiduciary duty and constructive fraud claims are **DISMISSED**.

### C. Claim Four: RICO.

Finally, I turn to plaintiffs' claim based on alleged racketeering activity. The question here is whether plaintiffs have alleged the requisite predicate acts to show a pattern of racketeering activity. The FAC alleges two racketeering predicates: (1) state-law bribery; *see* FAC ¶¶ 195–206, and (2) violations of the Travel Act.[4] *Id.* ¶¶ 207–13. Plaintiffs' theory is that Ramsey's

---

[4] Plaintiffs' predicate act theory under the Travel Act is a mail fraud concept derived from its

United States District Court
Northern District of California

alleged approval of payments for Judge Marston's dual legal and judicial services constitutes bribery in violation of California Penal Code sections 92 and 93. *Id.* ¶¶ 195–206.

"The RICO statute sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt. In addition, the conduct must be (5) the proximate cause of harm to the victim." *Eclectric Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citations omitted). "Racketeering activity, the fourth element, requires predicate acts, which [may include] mail and wire fraud." *Id.*

Defendants argue that the FAC fails to state a viable RICO claim for three reasons: (1) the bribery allegations solely relate to litigation activities, which cannot serve as the factual basis for a RICO claim under *Koziol*; (2) defendants, as tribal officials, cannot be charged for state-law bribery, particularly in an internal tribal matter, and (3) the FAC fails to allege facts showing that the Defendants engaged in an enterprise affecting interstate or foreign commerce. Mot. at 23–25; Reply at 10–13. Of these arguments, however, only (1) was present in defendants' motion; (2) and (3) appear for the first time in the reply brief. *Compare* Mot. at 23–25 *with* Reply at 10–13. I find that the first argument is controlling and do not consider the second and third arguments.

### 1.     Litigation Activity Alone Is Generally Not a Predicate Act for a Civil RICO Claim.

The parties dispute whether litigation activities can serve a predicate act for purposes of stating a RICO claim. *See* Mot. at 24, Opp. at 8–9. While the Ninth Circuit has not squarely addressed this issue, I am persuaded by the circuit's reasoning in *United States v. Koziol* as well as other circuits' discussion of this issue. Litigation activities alone generally cannot serve as predicate acts for civil RICO claims.

Several circuits have held that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (collecting authorities). As *Kim* explained, these decisions have held that "in

bribery theory. *See* FAC ¶ 207 ("It is a violation of the Travel Act to use the mail to violate the bribery laws of California within California.").

the absence of corruption," litigation activity such as signing and filing declarations generally "cannot serve as a predicate offense for a civil-RICO claim." *Id.* (quoting *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016)); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087–88 (11th Cir. 2004) (deciding that the "alleged conspiracy to extort money through the filing of malicious lawsuits" were not predicate acts of extortion or mail fraud under RICO); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (deciding that meritless litigation is not a predicate act of extortion under RICO); *Gabovitch v. Shear*, 70 F.3d 1252 (table), 1995 WL 697319, at *2 (1st Cir. 1995) (per curiam) (concluding that "proffering false affidavits and testimony to [a] state court" does not constitute a predicate act of extortion or mail fraud).

In the wake of *Kim*, district courts from around the country have found that litigation activities will not serve as predicate acts unless there are allegations of wrongdoing outside of the litigation, such as out-of-court activity or corruption. *See, e.g.*, *Abbondanza v. Weiss*, No. 19-cv-00328, 2022 WL 889099, at *16 (D. Colo. Mar. 24, 2022) (dismissing RICO claim where "[t]he evidentiary record does not show a fraud scheme beyond the litigation activity itself"); *US Dominion, Inc. v. MyPillow, Inc.*, No. 21-cv-0445, 2022 WL 1597420, at *6 (D.D.C. May 19, 2022) (dismissing RICO claim based on over 150 cease and desist letters because "those cease-and-desist letters, no matter how threatening, constitute litigation-related activity"); *Langan v. Smith*, 312 F. Supp. 3d 201, 207 (D. Mass. 2018) (surveying cases and observing that such cases "teach that RICO claims typically do not survive when rooted solely in litigation-related mail or wire fraud predicates"); *Kamal v. County of Los Angeles*, No. 17-cv-1986, 2019 WL 2502433, at *10 (C.D. Cal. May 2, 2019) (expressing "doubts that the SAC's allegations of litigation misconduct could act as predicate offenses for a civil RICO claim" in light of *Kim*). These authorities are persuasive.

There are "compelling policy arguments" that favor a rule that allegations of frivolous, fraudulent, or baseless litigation activities alone cannot constitute a RICO predicate act. *Kim*, 884 F.3d at 104. For example, if filing litigation documents could form the basis for a RICO action, "every unsuccessful lawsuit could spawn a retaliatory action," which would "inundate the federal

courts with procedurally complex RICO pleadings," "engender wasteful satellite litigation," and spawn "ad infinitum litigation with each party claiming that the opponent's previous action was malicious and meritless[.]" *Id.* (citations omitted and cleaned up). To find that "routine litigation activities" constituted RICO predicate acts "would result in the inundation of federal courts with civil RICO actions that could potentially subsume all other state and federal litigation in an endless cycle where any victorious litigant immediately sues opponents for RICO violations." *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 173 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. L. Offs. of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011). This cascade of litigation could "chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts." *Id.*

Moreover, I agree with defendants that *Koziol* supports the rule developed in other circuits that litigation activity alone generally does not give rise to a civil RICO claim. In *Koziol*, the Ninth Circuit considered whether the defendant's threats to file suit against a well-known entertainer based on "salacious and scandalous allegations of sexual harassment" unless the entertainer paid the defendant a million dollars constituted attempted extortion under the Hobbs Act. *United States v. Koziol*, 993 F.3d 1160, 1164 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 1372 (2022). *Koziol* rejected the argument that threats of sham litigation could never constitute "wrongful" conduct under the Hobbes Act. *Id.* at 1176. In reaching this holding, *Koziol* addressed and distinguished the line of civil RICO cases described above:

> [A]ll these cases involve civil RICO claims and parties involved in business disputes who had been or were at that time involved in litigation apart from the civil RICO suit. […] There are significant differences between these cases, dealing with civil RICO claims, and the criminal charges at issue in this case. As the Supreme Court has explained: "The creation of a private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion." *RJR Nabisco, Inc. v. Eur. Cmty.*, ─── U.S. ───, 136 S. Ct. 2090, 2106 (2016) (citation omitted).
>
> Indeed, in these cases the courts concluded that RICO does not authorize suits by private parties asserting claims against business or litigation adversaries, based on litigation activities, and seeking treble damages, costs, and attorneys' fees. *See Kim*, 884 F.3d at 104 ("'[I]f litigation activity were adequate to state a claim under RICO,

every unsuccessful lawsuit could spawn a retaliatory action,' which 'would inundate the federal courts with procedurally complex RICO pleadings.'" (citations omitted)); *Snow*, 833 F.3d at 525 (explaining that litigation tactics cannot be a predicate for a civil RICO claim); *Deck*, 349 F.3d at 1258 ("[R]ecognizing abusive litigation as a form of extortion would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim."); *see also Vemco, Inc.*, 23 F.3d at 134; *I.S. Joseph Co.*, 751 F.2d at 267.

In rejecting RICO liability based on litigation activities, these courts expressed policy concerns relating to ensuring access to the courts, promoting finality, and avoiding collateral litigation. […]

These cases turn on the scope of civil liability under RICO and related policy concerns, but they do not address the issue presented in this case: whether threats of sham litigation can establish criminal liability under the Hobbs Act. Furthermore, the policy concerns asserted in these cases are not implicated when a defendant, who has no relationship with his alleged extortion victim, including any prior or pending litigation, threatens sham litigation to obtain property to which he knows he has no lawful claim. […]  Therefore, we reject Koziol's argument that these civil RICO cases from other circuits establish that threats of sham litigation can never constitute extortion under the Hobbs Act.

*Id.* at 1174–75.  Although the Ninth Circuit ultimately held that threats of sham litigation could constitute extortion under the Hobbs Act, *Koziol* recognized the arguments and strong policy reasons that counsel caution in civil RICO claims.

For these reasons, I conclude that in general, litigation activity alone cannot serve as a predicate act for a civil RICO claim.  The question here is whether the conduct at issue constitutes the kind of litigation activity that is more akin to *Koziol* than *Kim*.

## 2.  The Conduct Alleged Here Constitutes Litigation Activity.

Plaintiffs argue that even if I conclude that litigation activity generally cannot serve as a basis for a civil RICO claim, this conclusion does not preclude their claim because (1) they allege predicate acts of bribery, not litigation activity, and (2) the bribery is "something more" that distinguishes this case from *Kim* and its progeny.  Opp. at 8–9.  Neither argument is persuasive.

As discussed above, while plaintiffs characterize the payments to Judge Marston as "bribery," this conduct is more easily understood as payments for Judge Marston's legal services as an attorney and salary as a judge.  Plaintiffs allege several tasks that Judge Marston undertook as an attorney working on behalf of the Tribe, such as negotiating with California in a gaming

compact and advising Blue Lake with regard to establishing an energy company. FAC ¶¶ 138(k), (l). Plaintiffs do not explain why Marston's request for payment for these services constituted a bribe. If I were to find that these allegations constituted a predicate act under RICO, the scope of potential liability is far-reaching. Without other evidence suggesting an improper purpose, the characterization of the billing invoices and subsequent payments as bribes is an unreasonable inference.

At the end of the day, all of the conduct that plaintiffs complain of relates to the underlying *Tribal Court Case*. I find that Ramsey's payment of the billing invoices and substitution of counsel and Frank's verification of discovery responses and submission of declarations are all litigation activity barred by *Kim*, and plaintiffs' characterizations of the payments as bribery rely on unreasonable inferences and are not plausible. The conclusory bribery allegations thus cannot support the RICO claim as a matter of law. The RICO claim is **DISMISSED.**

As a result, the FAC is **DISMISSED. I will not give** leave to amend in light of the opportunities plaintiffs have had throughout the litigation to state a claim. But in addition to the deficiencies with the claims, Ramsey and Frank are also shielded by various personal immunities. They provide independent reasons to dismiss this case.

## II.   IMMUNITIES

The Ninth Circuit has made clear that neither Ramsey nor Frank, as tribal officers acting within the scope of their tribal duties, are entitled to sovereign immunity because Blue Lake is not the real party in interest. *See Ninth Circuit Op.*, 17 F.4th at 910. Defendants have raised seven other immunity defenses under both federal and state law. Some of these defenses are thorny: the interplay between federal law, state law, and tribal officials with respect to personal immunities is not always clear. *Cf. Upper Skagit Indian Tribe v. Lundgren*, 138 S. Ct. 1649, 1654 (2018) (noting that "immunity doctrines lifted from other contexts do not always neatly apply to Indian tribes"). I will address each defense in order.

### A.   Ramsey Has not Shown that She Is Entitled to Absolute Immunity as Blue Lake Casino's CEO.

Ramsey claims absolute immunity under federal law because of her capacity as an elected

tribal official who also acts as the CEO of the Tribe's governmental gaming enterprise.[5]  Mot. at 9.

I disagree.

"Absolute immunity is an extraordinary attribute.  Those who act while clad in its armor cannot be held liable for damages under any circumstances, even if they violate clearly established federal rights, and even if they do so intentionally or maliciously."  *Brooks v. Clark Cnty.*, 828 F.3d 910, 915–16 (9th Cir. 2016).  "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity."  *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993).  "The justification must take care to explain why the official hoping to secure absolute immunity would not be sufficiently shielded by qualified immunity, which already affords officials considerable leeway to perform their jobs without fear of personal liability."  *Brooks*, 828 F.3d at 916.  Indeed, as the Court has explained, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.  We have been 'quite sparing' in our recognition of absolute immunity, and have refused to extend it any 'further than its justification would warrant.'"  *Burns v. Reed*, 500 U.S. 478, 486–87 (1991) (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988), and *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982)).  "Against the backdrop of qualified immunity, the question in any given context is always what marginal costs and benefits society would stand to incur by outfitting the particular official with an additional layer of protection."  *Brooks*, 828 F.3d at 916.

Defendants acknowledge that there is "no legal authority explicitly stating that a tribal CEO enjoys absolute executive immunity," but maintain that the principles undergirding executive immunity counsel in favor of applying it here.  Reply at 2.  There is some support for defendants' position.  In *Davis*, for instance, absolute immunity protected the general counsel for the Navajo tribe, who was sued over allegedly defamatory statements made by him within the scope of his official duties.  *Davis v. Little*, 398 F.2d 83, 85 (9th Cir. 1968).  *Davis* reasoned that the Navajo tribe's general counsel was entitled to immunity because his role "encompass[ed] public duties,

---

[5] Although defendants' table of immunities suggests that both Ramsey and Frank seek absolute immunity based on their status as tribal executives, *see* Mot. at 2, defendants exclusively argue that Ramsey is immune in this section.  *Id.* at 9–10.

official in character." *Id.* In light of public policy considerations, such as the "public need for the performance of public duties untroubled by the fear that some jury might find performance to have been maliciously inspired," the Ninth Circuit determined that absolute executive immunity applied. *Id.*

There is no doubt that Ramsey is a high-ranking Blue Lake executive official. She has held several high-ranking roles and has wielded considerable authority within Blue Lake. In addition to serving as the CEO of Blue Lake Casino, Ms. Ramsey served as Blue Lake's Tribal Administrator, as a judge of Blue Lake's Tribal Court, and as the vice-chair of Blue Lake Business Council. FAC ¶ 13. In her role as Tribal Administrator, Ms. Ramsey was responsible for the "day to day business affairs of the tribal government, and supervised the work of the tribal court clerk." *Id.* And according to the Blue Lake Rancheria Constitution, the business council is given broad powers.[6]

That said, defendants have not shown why absolute immunity is necessary to protect Ramsey in the exercise of her duties. They have not addressed why qualified immunity would be insufficient. *See* Mot. at 9–10, Reply at 1–2. Because defendants have failed to meet their burden to show "why the official hoping to secure absolute immunity would not be sufficiently shielded by qualified immunity," *Brooks*, 828 F.3d at 916, they have not established that Ramsey is entitled to absolute immunity. Accordingly, I **DENY** defendants' motion to dismiss on the grounds that Ramsey has absolute executive immunity.

### B. Qualified Immunity.

Next, I must decide whether Ramsey and Frank are entitled to qualified immunity. There are two parts to this inquiry. First, I must decide whether qualified immunity is available to tribal

---

[6] Defendants request that I take judicial notice of the Blue Lake Constitution because it is a matter of public record, duly authorized by the Blue Lake Business Counsel and the United States Department of the Interior, and authenticated by Arla Ramsey. *See* Request for Judicial Notice [Docket No. 96-3] at 2. I will take judicial notice of the Blue Lake Constitution because it is a matter of public record, but I will not take any judicial notice of a fact that is "subject to reasonable dispute." *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (taking judicial notice of matter of public record but not disputed facts stated in public records). The business council can, *inter alia*, enact laws for the welfare, health, and safety of the members of the Blue Lake Rancheria; negotiate and contract with governments and private parties; employ and pay fees for legal counsel; spend tribal funds; etc. Constitution art. v, §§ 4–5, 6(a), (b), (e).

United States District Court
Northern District of California

officials.  If so, I must determine whether Ramsey and Frank are entitled to its protections.

### 1.    Qualified Immunity Is Available to Tribal Officials.

Plaintiffs assert that tribal officials acting under color of tribal law are not entitled to the protection of qualified immunity.  Opp. at 9.  I disagree.

"Tribal officials, like federal and state officials, can invoke personal immunity defenses." *Ninth Circuit Op.*, 17 F.4th at 915; *see also Oertwich v. Traditional Vill. of Togiak*, 29 F.4th 1108, 1118 (9th Cir. 2022) (same); *cf. State Court Case*, 72 Cal. App. 5th at 431 ("Although tribal officials sued in their individual capacities cannot seek protection under the tribe's sovereign immunity, they may nonetheless be immune from suit under the distinct defense of official (or personal) immunity.").  The Supreme Court has made clear that personal immunity defenses may protect tribal governmental officials.  *See Lewis v. Clarke*, 137 S. Ct. 1285, 1292 n.2 (2017) (acknowledging tribal defendant's personal immunity defense but finding that the "defense [was] not properly before [the Court]" given the procedural posture of the case).

Many courts have applied qualified immunity to tribal officials in Section 1983 cases.  *See, e.g.*, *Maxwell v. Cnty. of San Diego*, 714 F. App'x 641, 644 (9th Cir. 2017) (affirming grant of summary judgment to tribal paramedics based on qualified immunity); *Bressi v. Ford*, 575 F.3d 891, 899 (9th Cir. 2009) (affirming grant of summary judgment to tribal police officers based on qualified immunity); *Armstrong v. Mille Lacs Cnty. Sheriffs Dep't*, 228 F. Supp. 2d 972, 989 (D. Minn. 2002), *aff'd sub nom. Armstrong v. Mille Lacs Tribal Police Dep't*, 63 F. App'x 970 (8th Cir. 2003) (affirming grant of summary judgment to tribal police officer based on qualified immunity); *Hester v. Redwood Cnty.*, 885 F. Supp. 2d 934, 946 (D. Minn. 2012) (granting summary judgment to tribal police officer based on qualified immunity); *see also Crawford v. Couture*, No. 17-cv-00004, 2017 WL 2954378, at *2 (D. Mont. July 11, 2017) (noting that "qualified immunity issues" related to a tribal law enforcement officer may bar plaintiff's excessive force claim).  Additionally, the Ninth Circuit has previously assumed, without deciding, that a *Bivens* or Section 1983 action could be brought against tribal officials acting in conjunction with state or federal officials, and that "individual tribal officials would be entitled to claim the same qualified immunity accorded state and federal officials in section 1983 and *Bivens* actions[.]"

*Ninth Circuit Op.*, 17 F. 4th at 915 (quoting *Kennerly v. United States*, 721 F.2d 1252, 1259–60 (9th Cir. 1983)).

Despite this weighty precedent, plaintiffs argue that qualified immunity is not available because "civil rights claims founded on a violation of Constitutional rights cannot be sustained against tribal officers acting under color of tribal law." Opp. at 9. True, "[a]ctions under section 1983 cannot be maintained in federal court for persons alleging a deprivation of constitutional rights under color of tribal law." *Evans v. McKay*, 869 F.2d 1341, 1347 (9th Cir. 1989). This is because Section 1983 cases require a plaintiff to show that "the conduct complained of was committed by a person acting under the color of *state* law." *Id.* (emphasis in original). But to the extent plaintiffs imply that such harms are therefore not redressable, plaintiffs reach too far— should these harms constitute violations of tribal law, they may be heard in the appropriate tribal court. *Id.*; *see also Lafley v. Adams*, No. 20-cv-29, 2020 WL 4530433, at *1 (D. Mont. Aug. 6, 2020) (dismissing Section 1983 claim because tribal defendant was acting under color of tribal law and noting plaintiff's remedy "lies in tribal court"). And more to the point, there are no allegations that the defendants violated any constitutional rights here.

Additionally, the policy rationales for qualified immunity all support its application to tribal officials. "The chief justifications for qualified immunity include: (1) protecting the public from unwarranted timidity on the part of public officials and encouraging the vigorous exercise of official authority; (2) preventing lawsuits from distracting officials from their governmental duties, and (3) ensuring that talented candidates are not deterred by the threat of damages suits from entering public service." *Jensen v. Lane Cnty.*, 222 F.3d 570, 577 (9th Cir. 2000) (internal citations omitted) (cleaned up). These justifications apply with equal force to tribal officials. *Cf. State Court Case*, 72 Cal. App. 5th at 437 (noting tribal officials' concerns that a "constant fear of suit may leave public officials unduly timid in performing their duties and, in this sense, indirectly interfere with public administration" weighs "in favor of granting personal immunity").

Both caselaw and policy instruct that tribal officials may be entitled to assert a qualified immunity defense. The issue is whether Ramsey or Frank have shown that the defense applies to them.

United States District Court
Northern District of California

### 2.      Ramsey Is Entitled to Qualified Immunity.

Defendants argue that they are entitled to qualified immunity because they are government officials who were sued in their individual capacities over discretionary actions that did not violate a clearly established statutory or constitutional right.  Mot. at 10–11.  For the reasons explained below, Ramsey is entitled to qualified immunity for her discretionary payments of Marston's legal and judicial bills on behalf of Blue Lake.  Frank is also entitled to qualified immunity for his discretionary actions.

Qualified immunity is a defense that is available to government officials who are sued in their individual capacities.  *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 965 (9th Cir. 2010).  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  Liability generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  The "'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery."  *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quoting *Anderson*, 483 U.S. at 640 n.2).  Accordingly, the Court has "repeatedly . . .  stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

Plaintiffs' allegations against Ramsey flow from her alleged approval of Marston's dual role as both a Blue Lake Tribal Court judge and Blue Lake's attorney, benefitting Blue Lake and herself, through paying his billing invoices.  *See* FAC ¶ 134.  Ramsey's alleged decision to use Marston as personal legal counsel for herself and Blue Lake appears to be a policy-based exercise of discretion consistent with her authority as a high-ranking tribal official who was responsible for the "day to day business affairs of the tribal government" and "supervised" the tribal court clerk.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Id.* ¶ 13.  Ramsey is thus entitled to qualified immunity unless she violated a "clearly established" constitutional or statutory right.  *Messerschmidt*, 565 U.S. at 546.

Whether Ramsey violated a clearly established statutory right depends on whether the payments constitute legitimate reimbursements for Marston's work or bribes.  Neither party argues that Judge Marston's dual role as Blue Lake judge and attorney violated any existing law or regulation applicable to the tribe.  Simply paying Marston's legal bills and compensation did not violate a clearly established statutory or constitutional right.  This entitles Ramsey to qualified immunity.  Plaintiffs dispute none of those facts, but assert that the payments constitute bribes, violating California's bribery laws.

"Although a defendant's subjective intent is usually not relevant to the qualified immunity defense, his mental state *is* relevant where it is an element of the alleged constitutional violation." *Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir. 2001) (citing *Crawford-El v. Britton*, 523 U.S. 574, 589 & n.11 (2001)) (emphasis added).  Here, although there is no alleged constitutional violation, Ramsey's subjective intent matters for purposes of whether Ramsey committed bribery.[7]  *See* Cal. Penal Code § 92 (West) ("Every person who gives or offers to give a bribe to any judicial officer . . . with intent to influence his vote, opinion, or decision upon any matter or question which is or may be brought before him for decision, is punishable by imprisonment in the state prison for two, three or four years."); *see also* FAC ¶¶ 195–206 (alleging that Ramsey paid Marston "with the corrupt intent of influencing Marston's opinions and decisions regarding cases in the tribal court" in violation of California Penal Code § 92).

"When a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court . . .  must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." *Crawford-El*, 523 U.S. at 597–98.  But because the court is charged with "exercise[ing] its discretion in a way that protects the substance of the qualified immunity defense," the "court may insist that the plaintiff

---

[7] Neither party argued that a different analysis would govern qualified immunity defenses for alleged statutory violations.  In the absence of any authority on point or any articulated reason to distinguish between constitutional and statutory violations, I will adhere to the teachings of the Ninth Circuit and Supreme Court in *Jeffers* and *Crawford-El*.

United States District Court
Northern District of California

put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." *Id.* (internal quotation and citation omitted).  Plaintiffs claim that Ramsey intended to bribe Marston when she approved of Marston's billing records.  FAC ¶ 134(i).  But plaintiffs' theory of improper motive does not reckon with the facts that (1) Marston worked as a lawyer on behalf of Blue Lake and Blue Lake officials, *see* FAC ¶ 138, and (2) Marston was entitled to be paid for these services.  In light of the seemingly undisputed fact that Blue Lake was entitled to employ Marston in dual capacities, it is difficult to construe Ramsey's behavior as wrongful or unlawful.  Mere payment of billing records for services rendered does not reasonably give rise to an inference of corruption or bribery.

In the absence of other facts suggesting that Ramsey intended to bribe Marston, I find that plaintiffs have not established the requisite improper motive.  Ramsey's discretionary decisions to pay Marston for his judicial and legal work undertaken on behalf of Blue Lake and Blue Lake officials did not violate a clearly established statutory or constitutional right.  As a result, Ramsey is entitled to qualified immunity.

### 3. Frank Is also Entitled to Qualified Immunity.

Frank is also entitled to qualified immunity for some of the alleged conduct.[8]  In addition to the allegations regarding the discovery and declarations that Frank submitted in the *Tribal Court Case*, plaintiffs also allege that Frank "arranged to bring" the *Tribal Court Case* before the Tribal Court as part of Blue Lake's "corrupt judicial scheme."  FAC ¶ 194.  But to the extent that Frank made or participated in the decision whether and where to file a lawsuit, this appears to be a discretionary policy decision made in his capacity as a Blue Lake Casino executive or Director of Business Development for Blue Lake.  *Id.* ¶ 14.  As a result, unless Frank violated a clearly established constitutional or statutory right, he is entitled to qualified immunity.

Plaintiffs do not point to any clearly established constitutional or statutory right that Frank may have violated—indeed, they do not respond to this point at all.  As a result, I conclude that

---

[8] Defendants do not seek qualified immunity for Frank's actions in verifying discovery responses or providing declarations.  Mot. at 11.

United States District Court
Northern District of California

1   Frank is entitled to qualified immunity for his alleged role in "arrang[ing] to bring" the *Tribal*

2   *Court Case*.

3          **C.     Discretionary Act Immunity.**

4          Before I discuss the theories of immunity under California and federal common law for

5   government officers engaged in discretionary work, I address plaintiffs' threshold argument that

6   personal immunities available to tribal officials must be determined under federal law, not state

7   law.[9]   Although plaintiffs can find no caselaw directly on point, they maintain that the "general

8   tenor of federal Indian law" indicates that "personal immunities available to tribal officials can

9   only be determined under federal law."  Opp. at 10.   Plaintiffs reason that because states generally

10  lack the power to regulate tribes, personal immunities must likewise be beyond the reach of state

11  power to define.  *Id.* at 11.  But the *State Court Case* decision, to the contrary, suggested that

12  California common law immunities apply to tribal officials.  *See State Court Case*, 72 Cal. App. at

13  448–49 (recognizing that a tribal official does not qualify as a "public employee" under the

14  California Tort Claims Act, but common law immunity principles apply to tribal officials).  My

15  analysis comes out the same under either California or federal common law.

16         Very few cases have considered the degree to which a tribal governmental official has

17  personal immunity from lawsuits challenging his or her discretionary acts undertaken within the

18  scope of his or her authority, likely because such cases were generally brought against the tribal

19  officials in their official capacity and were thus analyzed through the lens of sovereign immunity.

20  *See, e.g.*, *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479 (9th Cir. 1985) (applying

21  tribal sovereign immunity to tribal officers acting in their representative capacity and within the

22  scope of their authority); *United States v. State of Oregon*, 657 F.2d 1009, 1013 n.8 (9th Cir. 1981)

23  (same); *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 727 (9th Cir. 2008) (same); *Miller v.*

24  *Wright*, 705 F.3d 919, 928 (9th Cir. 2013) (same); *cf. Lewis*, 137 S. Ct. at 1292 n.2

25  (acknowledging but not analyzing tribal member's claim for personal immunity).  Although there

26

27  ─────────────────────
    [9] Neither party has argued that immunity for tribal government officers based on actions undertaken within
28  their roles as tribal officers should be analyzed under tribal law.

is sparse precedent regarding tribal officials, courts have considered questions of immunity for government employees under state and federal common law for decades.  As a result, I am guided by the general principles regarding immunity for government employees undertaking discretionary acts set forth under the state and federal common law discussed below.

### 1.    Ramsey Is Entitled to Immunity Under California Common Law.

"The common law of California [has] long provided that a governmental official has personal immunity from lawsuits challenging his or her discretionary acts within the scope of authority." *Caldwell v. Montoya*, 10 Cal.4th 972, 979 (1995) (en banc).  This common law immunity extended to "all executive public officers when performing within the scope of their power acts which require the exercise of discretion or judgment." *Id.* (quoting *Hardy v. Vial*, 48 Cal.2d 577, 578 (1957)).  The immunity was absolute, regardless of an official's "malice or other sinister motive." *Id.* (quoting *Hardy*, 48 Cal.2d at 578).

The California Legislature later codified common law discretionary act immunity for state and local officials under California Government Code section 820.2: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2; *Caldwell*, 10 Cal.4th at 979.  The California Third District Court of Appeal recently held—in the related state court matter—that a tribal official does not qualify as a "public employee" under the California Tort Claims Act, but common law immunity principles equally apply to tribal officials.  *State Court Case*, 72 Cal. App. 5th at 448–49.

"Whether a public employee is entitled to immunity for discretionary acts hinges on whether the acts or omissions in dispute constitute 'basic policy decisions' or 'ministerial' decisions." *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1122 (E.D. Cal. 2011) (quoting *Caldwell*, 10 Cal.4th at 981).  To determine whether an act is "discretionary" or "ministerial," a court considers whether an act is a "basic policy decision" that has been committed to coordinate branches of government, or if it is a "subsequent ministerial action[] taken in the implementation of those basic policy decisions." *Lopez v. S. Cal. Rapid Transit Dist.*,

40 Cal. 3d 780, 793 (1985) (quoting *Johnson v. State of California*, 69 Cal.2d 782, 793–97

(1968)).  "Ministerial decisions are those that involve the 'operational' functions of government,

whereas policy decisions are those that involve the 'planning' . . .  functions of government."

*Harmston v. City & Cnty. of San Francisco*, No. 07-cv-01186-SI, 2007 WL 2814596, at *3 (N.D.

Cal. Sept. 25, 2007) (quoting *Caldwell*, 10 Cal.4th at 981) (some internal quotations omitted).

Said differently, courts must distinguish between the "planning" and the "operational" levels of

decision-making.  *Lopez*, 40 Cal. 3d at 793.  This is because "there is no immunity for ministerial

decisions that merely implement a basic policy already formulated."  *Id.* (citation and quotation

marks omitted).

Ramsey's alleged decision to approve (through paying for) Marston's dual services as a

judge and as the Tribe's lawyer is discretionary conduct that is shielded by immunity under

California common law.  That conduct fell within the ambit of her authority as a Blue Lake

official.  According to the FAC and to the Blue Lake constitution, Ramsey wielded considerable

authority in her roles as Tribal Administrator, CEO of Blue Lake Casino, and vice-chair of Blue

Lake Business Counsel.   FAC ¶ 13; *see also* Section II.A, *supra* (describing the powers

constitutionally vested to members of the business counsel).  Her responsibilities included

"manag[ing] Marston's judicial and non-judicial work" and directing that Marston's monthly

invoices be paid.  *See* FAC ¶¶ 134(f), 147.

Ramsey's conduct is more appropriately characterized as a policy decision rather than

ministerial one.  Ramsey's alleged decision to retain Marston as legal counsel for herself and for

the Tribe is at the heart of plaintiffs' case.  California courts have routinely found that officials

engaged in personnel administration of public employees are entitled to discretionary act

immunity.  *See, e.g.*, *Caldwell*, 10 Cal.4th at 843–44 (finding that school board's decision to fire

school district superintendent was discretionary conduct for which they were immune); *Kemmerer

v. Cnty. of Fresno*, 200 Cal. App. 3d 1426, 1438 (1988), *disapproved of on other grounds

by Quigley v. Garden Valley Fire Prot. Dist.*, 7 Cal. 5th 798 (2019) (finding that decision to

institute disciplinary proceedings against employee was discretionary conduct for which officials

were immune); *Jones v. Oxnard Sch. Dist.*, 270 Cal. App. 2d 587, 589, 593 (1969) (finding that

United States District Court
Northern District of California

1   decision to hire other schoolteachers over plaintiff was discretionary conduct for which officials

2   were immune); *cf. Thompson v. Sacramento City Unified Sch. Dist.*, 107 Cal. App. 4th 1352, 1361

3   (2003) (finding that school district's decision to expel or readmit a student is discretionary conduct

4   which falls within discretionary acts immunity).

5       Plaintiffs argue that immunity is not warranted because Ramsey did not show that she

6   made a "conscious policy decision" to approve Marston's dual roles.  Opp. at 13.  They are correct

7   that Ramsey must show that the actual conduct at issue was a policy decision—it is not enough to

8   allege, for example, that an employee's role generally involves the exercise of discretion.  *See*

9   *Lopez*, 40 Cal.3d at 794; *Caldwell*, 10 Cal.4th at 981 ("The fact that an employee normally

10  engages in discretionary activity is irrelevant if, in a given case, the employee did not render a

11  considered decision.") (internal quotation marks omitted).  But Ramsey does not need to show that

12  she conducted a "strictly careful, thorough, formal, or correct evaluation" so long as a

13  "fair reading of the instant complaint reveals allegations" that Ramsey made an "actual, conscious,

14  and considered" policy decision.  *See Caldwell*, 10 Cal.4th at 983–84.  Cases have found that an

15  exercise of discretion, including weighing risks and advantages of the decision, exists based on the

16  nature of the specific conduct giving rise to the suit.  *See Roseville Cmty. Hosp. v. State of*

17  *California*, 74 Cal. App. 3d 583, 590 (1977) (finding exercise of discretion based on the nature of

18  policy decisions at issue); *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F. Supp. 715,

19  723 (E.D. Cal. 1993) (finding exercise of discretion from defendant's decision to enter into an

20  agreement and to fund certain projects); *cf. U.B. v. Cnty. of Tulare*, No. F058719, 2010 WL

21  3610201, at *9 (Cal. App. Sept. 17, 2010) ("Discretionary immunity, however, may be decided as

22  a matter of law even in the absence of allegations or evidence that the public employee engaged in

23  a conscious balancing of risks and benefits.").

24      The nature of these decisions to manage and approve Marston's dual roles in the Tribe's

25  executive and judicial spheres of government, when coupled with the high-ranking nature of

26  Ramsey's positions within the Blue Lake government, establish that this was a policy decision in

27  which Ramsey actually exercised her discretion.  There are no allegations that Ramsey was

28  required per tribal policy to approve the billing invoices or that she lacked discretion in this area.

United States District Court
Northern District of California

1   Plaintiffs also contend that discretionary act immunity does not apply because Ramsey and

2   Frank are casino executives and casinos are not "coordinate branches of government." Opp. at 13.

3   But plaintiffs sued Ramsey and Frank as the Blue Lake Rancheria's Tribal Administrator and the

4   Director of Business Development, respectively, along with their roles as Blue Lake Casino

5   executives. FAC ¶¶ 14–15. And federal law requires that the Blue Lake Casino function as an

6   arm of the Blue Lake Rancheria government. *See* 25 U.S.C. § 2710(b)(2)(A) (providing that,

7   except in certain circumstances, "the Indian tribe will have the sole proprietary interest and

8   responsibility for the conduct of any gaming activity"). Defendants' status as executives of the

9   Blue Lake Casino does not preclude discretionary act immunity.

10   Because defendants have shown that Ramsey's approval of Marston's legal bills to serve

11   as Blue Lake Tribal Court judge and Blue Lake attorney was a policy-based discretionary action

12   that Ramsey conducted in the exercise of her tribal authority, she is entitled to immunity under

13   California common law.

### 2.   Defendants Have Not Shown that Frank Is Entitled to Immunity Under California Common Law.

15   Defendants contend that Frank is also entitled to discretionary act immunity for his

16   purported role in "arrang[ing] to bring" the *Tribal Court Case* before the tribal court.[10] Mot. at 15;

17   *see also* FAC ¶ 194. But the FAC alleges that Frank acted "[u]nder the direction of Ramsey,"

18   suggesting that Ramsey—not Frank—exercised her judgment here. Frank's conduct is more aptly

19   characterized as "operational" rather than "planning" level of decision-making. *Lopez*, 40 Cal. 3d

20   at 793. Such "operational" decisions are ministerial and are not subject to immunity. *Id.*

21   Accordingly, I conclude that defendants have not shown that Frank is entitled to discretionary act

22   immunity under state law.

### 3.   The Same Analysis Applies Under Federal Law

24   Defendants also seek the protection of discretionary act immunity under the federal

---

[10] Defendants do not claim that executing declarations or verifying discovery constitutes policy-based discretionary conduct. Mot. at 14–15.

common law.[11]  Mot. at 2.  I find that under the federal common law rule established in *Westfall v. Erwin*, Ramsey is entitled to absolute immunity from state-law tort actions for discretionary conduct undertaken within the scope of her official duties.[12]  *See* 484 U.S. 292, 297–98 (1988).  But for the reasons just described Frank is not because his alleged conduct was not discretionary.

In *Westfall,* the Court narrowed the scope of officials' personal immunity to exclusively discretionary conduct.  *Id.*  Congress responded by enacting what is commonly known as the Westfall Act (the Federal Employees Liability Reform and Tort Compensation Act of 1988), which conferred immunity to federal employees acting within the scope of their office or employment regardless of whether their conduct was discretionary.  *See* 28 U.S.C. § 2679.  While *Westfall* no longer applies to federal employees, "the *Westfall* test remains the framework for determining when nongovernmental persons or entities are entitled to the same immunity."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 72 (2d Cir. 1998); *Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1289 (D.C. Cir. 1997) (explaining that "[f]or the appropriate federal common law standard, we look to *Westfall*" and "*Westfall* remains the common law rule"); *see also Trans-Aid Inc. v. United States*, No. 14-cv-8302, 2015 WL 13919198, at *4 (C.D. Cal. Mar. 26, 2015) (applying *Westfall* test to determine official immunity for nongovernmental persons and entities); *cf. Lewis*, 137 S. Ct. at 1292 n.2 (acknowledging tribal defendant's claim for

---

[11] Plaintiffs object that defendants waived their arguments based on federal discretionary act immunity. Opp. at 14.  While defendants could have been clearer, they did assert that discretionary act immunity under both California common law and federal common law applied.  *See* Mot. at 2 (listing discretionary act immunity under California common law and federal common law in the table of immunities), *id.* at 8–9 ("The immunities afforded to executives, judicial officers, legislators, and litigants under federal and California [law] should be equally available to similar officials in tribal governments.").

[12] Because defendants assert that they seek the protection of the federal common law, Mot. at 2, I understand them to seek the protection of the *Westfall* rule, which established that officials are entitled to absolute immunity for state-law torts for discretionary conduct undertaken within the scope of their official duties.  The discretionary function exemption under the Federal Tort Claims Act involves a similar analytic framework as in *Westfall*: (1) the conduct at issue must be discretionary, and (2) the discretionary conduct must be of the kind that the discretionary function exception was designed to shield.  *See Lam v. United States*, 979 F.3d 665, 673–74 (9th Cir. 2020) (describing test for discretionary function exception to FTCA); *see also Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172, 182 n.4 (D.D.C. 2016) (relying on cases analyzing the "discretionary function" exception to the FTCA "because the federal common law of official immunity has culled from the FTCA's 'discretionary function' jurisprudence") (some internal quotation marks and citation omitted).  My analysis of Ramsey and Frank's conduct under the FTCA would reach the same conclusions.

United States District Court
Northern District of California

official immunity under *Westfall*).  The California Court of Appeals has also applied *Westfall*'s requirement of discretionary conduct to determine whether tribal officials are entitled to tribal immunity.  *Turner v. Martire*, 82 Cal. App. 4th 1042, 1048–49 (2000), *as modified on denial of reh'g* (Aug. 14, 2000).

For the reasons provided earlier, Ramsey's approval of Marston's dual roles was discretionary conduct undertaken within the scope of her authority as a tribal executive.  The FAC does not allege that Ramsey's discretion was limited by any tribal policy.  Ramsey's conduct is thus protected under *Westfall*.  *See Westfall*, 484 U.S. at 298–99.

*Westfall* also instructs courts to consider "whether the contribution to effective government in particular contexts outweighs the potential harm to individual citizens."  *Id.* at 299.  Under the facts alleged here, I find that Ramsey's alleged approval of Marston's work as a judge and as an attorney for the Blue Lake tribe outweighs the potential harm to individual citizens that could result.  As alleged in the FAC, the Blue Lake tribe requires counsel to offer legal advice and represent it in myriad matters ranging from employee disputes to land trust matters to negotiations with the state of California.  *See* FAC ¶ 138.  Blue Lake should be entitled to choose its counsel without fear of harassment or the threat of civil liability.  To the extent that a litigant is concerned about a potential conflict of interest arising from an attorney employed in a dual capacity, the litigant may seek recusal (as indeed plaintiffs have done).

While Ramsey is entitled to discretionary act immunity under *Westfall*, Frank is not entitled .  Defendants have not shown that his conduct was discretionary.

**D.     Ramsey Does Not Have Judicial Immunity.**

Although Ramsey has served as a Blue Lake tribal court judge, she is not entitled to judicial immunity because none of the allegations lodged against her appear to relate to her role as a Blue Lake tribal judge.  *See, e.g.*, FAC ¶¶ 111, 134–152 (alleging that Ramsey appointed substitute counsel and directed that Marston's billing invoices be paid).  As defendants themselves acknowledge, it is "unclear" which specific factual allegations in the FAC relate to Ramsey's role as a Blue Lake tribal judge.  Mot. at 15–16.  Moreover, Ramsey conceded to the Ninth Circuit that she was not entitled to judicial or quasi-judicial immunity.  *See Ninth Circuit Op.*, 17 F.4th at 916

1 ("At oral argument, the Blue Lake Defendants conceded that Ramsey, Frank, Rapport, and R&M

2 would not be entitled to judicial or quasi-judicial immunity.").

3 **E.      Ramsey Does Not Have Legislative Immunity.**

4 For the same reasons, Ramsey is also not entitled to legislative immunity.  Ramsey did

5 serve as the vice-chair of Blue Lake Business Council, which is Blue Lake's governing body.  *See*

6 FAC ¶¶ 10, 13.  But plaintiffs do not assert that Ramsey is liable based on her legislative activity.

7 Opp. at 16.  Because the FAC does not seek to impose liability based on Ramsey's legislative

8 activity, legislative immunity does not apply.

9 **F.      The Litigation Privilege Shields Frank from the Aiding and Abetting Claims.**

10 The last source of protection that I must address derives from California's litigation

11 privilege, codified at California Civil Code section 47(b).  Defendants contend that the litigation

12 privilege shields Frank from all causes of action except for the wrongful use of civil proceedings

13 claim because the allegations against him all flow from the work undertaken during the *Tribal*

14 *Court Case*.  Mot. at 17–18.  I agree that the litigation privilege shields Frank from the aiding and

15 abetting causes of action but disagree concerning the RICO claim.

16 "For well over a century, communications with 'some relation' to judicial proceedings

17 have been absolutely immune from tort liability by the privilege codified section 47(b)."  *Rubin v.*

18 *Green*, 4 Cal. 4th 1187, 1193 (1993) (en banc) (citing Cal. Civ. Code § 47(b)).   Section 47(b)

19 renders privileged a "publication or broadcast" made, among other things "[i]n any . . . judicial

20 proceeding."  *See* Cal. Civ. Code § 47(b)).  The privilege exists "to afford litigants and witnesses

21 the utmost freedom of access to the courts without fear of being harassed subsequently by

22 derivative tort actions."  *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 152 (2013)

23 (internal quotation marks, alteration, and citations omitted).  When it applies, the privilege is

24 absolute.  *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 780 (2017).

25 "The usual formulation is that the privilege applies to any communication (1) made in

26 judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3)

27 to achieve the objects of the litigation; and (4) that have some connection or logical relation to the

28 action."  *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990).  This

United States District Court
Northern District of California

1   privilege extends to statements made outside of judicial proceedings, such as, for instance, both

2   the filing of a forged will in probate court and the act of preparing the will. *Graham-Sult v.*

3   *Clainos*, 756 F.3d 724, 742 (9th Cir. 2014) (citing *Steiner v. Eikerling*, 181 Cal. App. 3d 639, 643

4   (1986)). The privilege also encompasses prelitigation communications. *Rubin*, 4 Cal.4th at 1194–

5   95. "Any doubt about whether the privilege applies is resolved in favor of applying it."

6   *Contreras v. Dowling*, 5 Cal. App. 5th 394, 415 (2016), *as modified on denial of reh'g* (Nov. 18,

7   2016) (citation omitted).

8          The privilege, however, does not shield against actions for malicious prosecution. *See*

9   *Kilgore v. Younger*, 30 Cal. 3d 770, 778 (1982); *Silberg*, 50 Cal. 3d at 212. And the wrongful use

10  of civil proceeding tort alleged here is a type of malicious prosecution action. *See* 5 Witkin,

11  Summary of California Law (11th ed. 2022) Nature of Tort, § 571. As a result, the litigation

12  privilege does not shield Frank from the wrongful use of civil proceedings claim.

13         Nor does the litigation privilege apply to federal claims. *Lenk v. Monolithic Power Sys.*

14  *Inc.*, No. 19-cv-03791-BLF, 2020 WL 619846, at *14 (N.D. Cal. Feb. 10, 2020) (citing

15  *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992) (holding that state

16  privileges apply only to state law claims)). As a result, the litigation privilege does not shield

17  Frank from the RICO claim. *Lenk*, 2020 WL 619846, at *14 (rejecting argument that RICO claim

18  was barred by California's litigation privilege); *Relevant Grp., LLC v. Nourmand*, No. 19-cv-

19  05019, 2022 WL 2916860, at *12 (C.D. Cal. July 25, 2022) ("It is settled precedent in the Ninth

20  Circuit that the litigation privilege does not apply to RICO claims.") (internal quotation marks and

21  citation omitted). This means that the only point of dispute is whether the litigation privilege may

22  shield Frank from the aiding and abetting causes of action.

23         Because all of the allegations concerning Frank involve his work in the *Tribal Court Case*,

24  they fall within the protection of the litigation privilege. *Silberg*, 50 Cal. 3d at 212. Plaintiffs

25  allege that Frank: verified written discovery and executed supporting declarations in *Tribal Court*

26  *Case*; was copied on a demand letter sent to ABI; and "arranged to bring *Blue Tribal Court Case*

27  before the tribal court." FAC ¶¶ 48, 122, 194. These prelitigation and litigation activities are

28  squarely encompassed by the litigation privilege. *Rubin*, 4 Cal.4th at 1194–95. The FAC does not

1    contain any other substantive allegations pertaining to Frank or his role in the alleged judicial

2    conspiracy.

3        The litigation privilege is, as plaintiffs argue, limited to protecting communications which

4    have "reasonable relevancy to the subject matter of the action." Opp. at 15 (quoting *Silberg*, 50

5    Cal.3d at 219–20).[13]   In plaintiffs' view, because "[n]one of the alleged conduct in suborning

6    Judge Marston or Blue Lake Tribal Court has any 'reasonable relevancy'" to the iSlot Agreement,

7    it is not protected by California's litigation privilege. *Id.*  But plaintiffs mischaracterize Frank's

8    conduct: the actual communications alleged here—such as the discovery response verifications

9    and declarations—are certainly reasonably relevant to the *Tribal Court Case*.  As alleged in the

10   FAC, Frank's role in the alleged judicial conspiracy exclusively stems from the litigation tasks he

11   undertook in the *Tribal Court Case*.  FAC ¶¶ 48, 122, 194.  Plaintiffs have not pointed to any

12   allegations to the contrary.

13       As a result, the litigation privilege applies and requires the dismissal of the aiding and

14   abetting breach of fiduciary duty and aiding and abetting constructive fraud claims against Frank.

15   It does not apply to the wrongful use of civil proceeding or RICO claims.

**CONCLUSION**

17       For the foregoing reasons, I find that plaintiffs have again failed to state a claim.  I also

18   find that both defendants are shielded by personal immunity defenses: Ramsey is entitled to

19   qualified immunity and discretionary act immunity, and Frank is entitled to qualified immunity

20   and the protection of the litigation privilege under California law.  As a result, all claims against

21   both defendants are dismissed without leave to amend.

22       **IT IS SO ORDERED.**

23   Dated: November 22, 2022



WILLIAM H. ORRICK
United States District Judge

---

[13] Per plaintiffs' request, I note that plaintiffs asserted this argument in the prior motion to dismiss.  *See* Opp. at 17 n.4; Docket No. 82 at 22.

*United States District Court*
*Northern District of California*